Argued May 11, reversed June 15, petition for rehearing denied
August 5, 1960

# OREGON-NEVADA-CALIFORNIA FAST FREIGHT, INC. *v.* STATE TAX COMMISSION

353 P. 2d 541

*Alfred B. Thomas,* Assistant Attorney General, Salem, argued the cause for appellants. With him on the briefs were Robert Y. Thornton, Attorney General, and Theodore W. de Looze, Assistant Attorney General, Salem.

*Ferris F. Boothe,* Portland, argued the cause for the respondent. With him on the brief were Black, Kendall & Tremaine.

Before McAllister, Chief Justice, and Rossman, Warner, Perry, Sloan, O'Connell and Goodwin, Justices.

SLOAN, J.

Defendants, acting as the State Tax Commission, assessed deficiency excise taxes against plaintiff for the years 1950, 1951 and 1952, and denied plaintiff's claim for refund of excise taxes for the same years. Plaintiff has abandoned the refund claim for the year 1950 because of the statute of limitations. Plaintiff appealed to the circuit court for Multnomah county.

That court set aside the order of the commission and awarded plaintiff the claimed refunds. The commission appeals. The case was presented to the trial court upon an agreed statement of facts. No other evidence was submitted. It is necessary to decide if the commission's allocation of plaintiff's income attributable to Oregon discriminated against interstate commerce.

The facts that are essential to defining the issue to be discussed are taken, therefore, from the stipulation of facts:

"Plaintiff's main offices and principal place of business were and are in San Francisco, California, with a District Headquarters for Oregon in Portland, Oregon. During the period in question, plaintiff owned no real property in Oregon except some land in Ashland, Oregon, with a value of less than $500. It leased and operated its main Oregon terminal in Portland, and smaller terminals in Medford, Grants Pass, Klamath Falls, Coos Bay, Roseburg and Coquille.

"Plaintiff's operations consisted of hauling freight between Portland, Oregon and San Francisco, California and way points. The bulk of its traffic in interstate commerce was between Portland, Oregon, and San Francisco, California, with some comparatively minor traffic between San Francisco, California and Klamath Falls and San Francisco and Medford. Its operations in intrastate commerce in Oregon consisted of freight hauling between Portland, Oregon, and points in western Oregon, including Coos Bay, Coquille, Grants Pass and Roseburg, with the bulk of the movement southbound from Portland, Oregon. Except for pick-up and delivery incident to its line-haul operation, plaintiff conducts no independent intracity cartage operations.

"The corporation excise tax is levied for the

privilege of carrying on or doing business by the taxpayer within the State of Oregon. [The statutes imposing the tax and requiring the tax commission to provide the formula for taxing multistate businesses are in the margin.] It does not purport to be a tax to pay for the use of the highways nor to pay for the cost of regulations of the carrier, either by the Motor Vehicle Department or by the Public Utilities Commission.

"It is economically beneficial, but not necessary, for plaintiff to carry on its operations in both interstate and intrastate commerce. The local pick-up and delivery operations, the cost of administration, the cost of vehicle maintenance and the cost of other terminal operations are substantially the same character for both plaintiff's interstate and intrastate operation. The local pick-up and delivery operations, the use of mobile equipment and the use of its terminal facilities are comingled between intrastate and interstate commerce. Plaintiff designates no property specifically for use in intrastate or interstate commerce. Line-haul trips are scheduled separately with an entire load in almost all instances destined either for an intrastate or out-

---

For the years involved here the tax was imposed by § 110-1506, OCLA:

"Every * * * corporation doing or authorized to do business within this state, except as hereinafter provided, shall annually pay to this state, for the privilege of carrying on or doing of business by it within this state, an excise tax according to or measured by its net income, as herein defined, * * *."

The authority of the tax commission to allocate income is § 110-1507, OCLA:

"(a) If the gross income of a corporation is derived from business done both within and without the state, the determination of net income shall be based upon the business done within the state, and the commission shall have power to permit or require either the segregated method of reporting or the apportionment method of reporting, under rules and regulations adopted by the commission, so as fairly and accurately to reflect the net income of the business done within the state.

"(b) The provisions of subsection (a) dealing with the apportionment of income earned from sources both within and without the state of Oregon are designed to allocate to the state of Oregon on a fair and equitable basis a proportion of such income earned from sources both within and without the state. Any taxpayer may submit an alternative basis of apportionment with respect to its own income and explain that basis in full in its return. If approved by the tax commission that method will be accepted as the basis of allocation."

side-the-state destination. Plaintiff secures and handles its shipment contracts for both intrastate and interstate commerce through the same office in Oregon.

"Plaintiff, in 1950, 1951 and 1952, paid a number of taxes in California, Nevada and Oregon, including heavy gasoline and diesel fuel taxes of various types for the benefit of state highways in all three states, privilege taxes for the privilege of operating within said states, and various license fees for the operation of its vehicles within the three states. Said taxes require the keeping of accurate records as to revenue (line-haul) miles which are the usual bases for the imposition of license or taxing measures upon a motor vehicle common carrier. Mileage records are also required by the Interstate Commerce Commission of the United States and the Public Utilities Commissions of Oregon and California. These mileage records are constantly audited [sic] and their accuracy is accepted by the various taxing and regulatory authorities of the United States and of Oregon and California. As a regular route scheduled carrier, plaintiff's operations lend themselves to an accurate mileage accounting system.

"Revenue miles travelled by plaintiff for the years in issue and the allocation fractions based thereon are as follows:

|  | 1951 | 1952 |
|---|---|---|
| "Oregon intrastate miles | 870,600 | 907,627 |
| Oregon interstate miles | 696,217 | 697,622 |
| Total Oregon miles | 1,556,817 | 1,605,249 |
| Oregon intrastate miles divided by total miles everywhere | .2083 | .2162 |
| Total Oregon miles divided by total miles everywhere | .3725 | .3824" |

A similar tabulation for the year 1950 has been eliminated. The Oregon intrastate miles were, for our purposes, fully segregated. They consisted exclusively of line-haul miles of carriage between Portland and other cities in Oregon and return. The interstate miles were also line-haul miles traveled within Oregon but the termination points of the hauls were beyond the Oregon boundaries.

The "allocation fractions" set forth in the table above provide the difference between the parties and the basis for this case. In computing the amount of plaintiff's excise tax the commission adopted a formula which was determined by dividing all line-haul miles within the state of Oregon by the total miles of plaintiff's operations in all states. Plaintiff contends that the determination of the fraction should be made by using only the line-haul miles in Oregon which are strictly intrastate in character; that the formula adopted by the commission by including the interstate line-haul miles within the state of Oregon violated Art I, § 8, of the United States Constitution. That section, of course, grants Congress the power to regulate commerce.

It is apparent that by the commission's allocation factor the plaintiff would be obliged to pay an excise tax to Oregon on .3725 per cent of its total 1951 income and on .3824 per cent of its total 1952 income. Plaintiff's computation would require it to pay the tax on .2083 per cent of income for 1951 and .2162 for 1952. This creates the difference in the amount of taxes plaintiff may be required to pay for the two years in question.

The effort of the state governments to tax all of the business conducted within the respective states, in one form or another, has been the source of much

litigation on the tender subject of impairing or discriminating against interstate commerce. The first problem presented, therefore, is to glean from numberless decisions of the Supreme Court of the United States on the subject of state taxes and interstate commerce the rule to be applied to the facts presented. To avoid undue repetition every reference to the Supreme Court will refer to the Supreme Court of the United States.

Both parties have cited many decisions and then engaged in a matching game to compare the facts of this case with the decisions which seem to support the view urged by each party. The difficulty which evolves from this matching process can be seen by a quote from one of the recent opinions of the Supreme Court in *Northwestern Cement Co. v. Minn.*, 1958, 358 US 450, 457, 79 S Ct 357, 3 L Ed2d 421, 67 ALR2d 1292:

> "* * * Commerce between the States having grown up like Topsy, the Congress meanwhile not having undertaken to regulate taxation of it, and the States having understandably persisted in their efforts to get some return for the substantial benefits they have afforded it, there is little wonder that there has been no end of cases testing out state tax levies. The resulting judicial application of constitutional principles to specific state statutes leaves much room for controversy and confusion and little in the way of precise guides to the States in the exercise of their indispensable power of taxation. * * *"

We can narrow and simplify the issue we will decide by resort to two recent decisions of the Supreme Court. The first of these, *Spector Motor Service v. O'Connor*, 340 US 602, 71 S Ct 508, 95 L Ed 573, was decided in 1951. The case involved the constitutionality of a Connecticut statute as that state attempted

to apply the statute to an interstate motor carrier. The Connecticut statute, like the Oregon statute, levied the tax for the "privilege" of doing business within the state of Connecticut. The business conducted by Spector Motor Service, Inc. within the state of Connecticut was *exclusively* interstate in character. It did not engage in any intrastate carriage of the kind performed by plaintiff in Oregon. The Supreme Court held that the state could not impose a privilege tax upon Spector because of the exclusive interstate nature of its business. This was on the theory that since there was no incidence of "local activity" in Connecticut, the state could neither grant nor deny the right to engage in interstate commerce within the state.

In the case before us the commission conceded that the Oregon "privilege" tax is like that of Connecticut and that if the plaintiff were engaged exclusively in interstate commerce the *Spector* case would preclude any payment of the tax by plaintiff. On the other hand, plaintiff conceded that since it did engage in intrastate carriage, wholly within Oregon, then the *Spector* case does not prohibit the state from collecting the tax imposed by § 110-1506, OCLA, on that portion of plaintiff's income allocable to Oregon. The conflict arose, as we have mentioned before, from the basis upon which the commission arrived at the amount of plaintiff's income subject to Oregon tax. We will come back to the issue after referring to the other of the two cases mentioned.

The second decision of the Supreme Court to be mentioned is that of *Northwestern Cement Co. v. Minn.,* supra, already quoted from. That case held that Minnesota could levy an *income tax* on the cement company even though the business of that company within Minnesota was *exclusively interstate* in char-

acter. The theory of the Northwestern case was that an income tax, fairly apportioned, does not prevent or impede the right to engage in interstate commerce.

The Supreme Court, therefore, by a process of attaching labels to the kind of tax imposed, has said that a state "privilege" tax may not be levied upon an exclusively interstate business but that an "income tax" can be. The label basis of deciding the validity of a state tax as it may or may not affect interstate commerce has been the cause of criticism by writers and by Justice Clark in his dissenting opinion in the *Spector* case. See, Hartman, State Taxation of Interstate Commerce, 1953, p 201 et seq. In the case here we think there is little to distinguish the tax imposed by § 110-1506, OCLA, and the Oregon income tax later imposed by the Corporation Income Tax of 1955. Oregon Laws 1955, ch 334. As already mentioned, however plaintiff concedes that if the tax here in question were labeled "income tax" it would be compelled to pay the tax and the commission concedes that since the tax in question is labeled a "privilege" tax, the plaintiff could not be taxed at all if its entire business were interstate. Neither party has attempted to ascertain if there is any actual difference, except the label, in the nature of the taxes imposed nor, by formulation of an issue, required this court to do so. We will take the parties as we find them.

We are not, therefore, required to decide if the statute which imposed the tax was, itself, an invalid excursion into interstate commerce. What has been said should make it clear that there remains the one limited issue: Did the allocation formula adopted by the commission, which included line-haul miles operated by plaintiff's trucks within the boundaries of Oregon, but which were strictly interstate in character,

utilize a constitutional means to measure plaintiff's Oregon tax obligation?

It is virtually impossible to reach a satisfactory answer to this question by an attempt to match the limited facts presented in this case with any one of several hundred cases that have considered more or less similar problems. The uncertain result which attends this process is exemplified by an extensive analysis of many such cases, and the conflicting result arrived at in the process, by the majority and dissenting opinions of the Supreme Court of Michigan in *Duluth, S. S. & A. R. Co. v. C. & S. Comm.*, 1958, 353 Mich 636, 92 NW2d 22; cert den 359 US 310. The Michigan court was confronted with a case almost identical to that presented here. The taxpayer was a railroad which, like plaintiff here, was engaged in commerce which could be segregated into the part that was wholly intrastate and that which was interstate. The officials responsible for assessing the Michigan tax applied a formula identical to that of the commission here and included the interstate ton-miles operated by the taxpaying railroad in Michigan. The majority of the Michigan court concluded that decisions of the Supreme Court sustained the right of the state to include the interstate ton-miles operated within that state in arriving at a formula for allocating income. We agree with the result reached by the Michigan court.

The futility of attempting to find a settled rationale within the opinions of the Supreme Court is also indicated by the excellent historical analysis of the decisions by Professor Hartman in his work on State Taxation of Interstate Commerce, previously cited. See also: State Taxation of Interstate Commerce: An Appraisal and Suggested Approach, Wash U L Q, 1953,

also written by Professor Hartman. The author demonstrates that at different periods in its history the Supreme Court has fluctuated in the theories by which it has approached the subject at hand. Not only that, he also shows the irreconcilable conflict between the cases involving the right to tax in comparison with the cases which have allowed the states to regulate interstate commerce in areas other than taxation. A study of the works cited is convincing that we will not find a solution to the question to be decided by the matching process.

Instead, it is our view that a more realistic and practical approach is to find and adopt a suitable test to measure the application of the formula against the claim that it was an interference with interstate commerce. The need for the kind of a solution we seek is emphasized by the opinion of the Supreme Court in *Spector Motor Service v. O'Connor,* supra, 340 US, pp 609-610:

> "Our conclusion is not in conflict with the principle that, where a taxpayer is engaged both in intrastate and interstate commerce, a state may tax the privilege of carrying on intrastate business and, within reasonable limits, may compute the amount of the charge *by applying the tax rate to a fair proportion of the taxpayer's business done within the state, including both interstate and intrastate. Interstate Pipe Line Co. v. Stone, supra; International Harvester Co. v. Evatt,* 329 U. S. 416; *Atlantic Lumber Co. v. Comm'r of Corporations and Taxation,* 298 U. S. 553. * * *" (Emphasis supplied)

We note that the dissenting opinion of Justice Clark in the *Spector* case states: "Hence, if appellant had been engaged in an iota of activity which the Court would have been willing to call 'intrastate,' Connecticut

could have applied its tax to the company's interstate business in the precise form which it now seeks to employ—a tax on the privilege of doing business in Connecticut measured by the entire net income attributable to the State, even though derived from interstate commerce." 340 US, pp 610-611. There is nothing in the majority opinion in *Spector*, or in any later decision of the Court, which says the statement by Justice Clark is not correct.

■■ In other words, what test do we apply, then, to determine if the formula to allocate income adopted by the state is within the "reasonable limits" permitted to the state to enable it to find a "fair proportion of the taxpayer's business done within the state, including both interstate and intrastate [commerce]"? Our examination of the cases and other writings leads us to select a test to measure discrimination adopted by Justice Rutledge in a concurring opinion in *Memphis Gas Co. v. Stone,* 1947, 335 US 80, 96, 97, 68 S Ct 1475, 92 L Ed 1832. The test is: "[The tax] places no greater burden upon interstate commerce than the state places upon competing intrastate commerce of like character; is duly apportioned, that is, does not undertake to tax any interstate activities carried on outside the state's borders; and cannot be repeated by any other state."

We hold that the allocation formula enforced by the commission did not violate plaintiff's constitutional rights unless the application of the formula violated the requirement of nondiscrimination. When we apply the test so clearly stated by Justice Rutledge we find that there were no facts submitted which suggest that the commission formula: (1) subjected plaintiff to a greater tax burden than a competitor engaged only in Oregon carriage; (2) taxed income earned from out-

side the state; nor (3) did the formula subject plaintiff's Oregon mileage to taxation by California or any other state in which plaintiff operated. In the absence of the facts which would have established or demonstrated violation of these requirements, we find that the tax did not discriminate against or impede plaintiff's ability to engage in interstate commerce.

■ It was not enough for plaintiff merely to show that its interstate miles within the boundaries of Oregon are included in the commission's computations. The plaintiff must also prove some interference or discrimination because of that fact. The plaintiff has failed to do so. The party asserting constitutional violation must sustain the burden of proof. *Jehovah's Witnesses v. Mullen et al,* 1958, 214 Or 281, 330 P2d 5; app dis 359 US 436.

A study of the cases reveals another consideration the Supreme Court has applied to cases involving this problem which we wish to mention. For example, it was said in the majority opinion in *Memphis Gas Co. v. Stone,* supra, 335 US, pp 95-96:

> "* * * The events giving rise to this tax were no more essential to the interstate commerce than those just mentioned or ad valorem taxes. We think that the state is within its constitutional rights in exacting compensation under this statute for the protection it affords the activities within its borders. Of course, the interstate commerce could not be conducted without these local activities. But that fact is not conclusive. These are events apart from the flow of commerce. This is a tax on activities for which the state, not the United States, gives protection and the state is entitled to compensation when its tax cannot be said to be an unreasonable burden or a toll on the interstate business."

In this case we are not concerned with deciding if plain-

tiff is engaged in a "local activity" in Oregon. That, of course, must be admitted. If there is validity to the concept that a state is entitled to tax interstate commerce, in fair proportion, on the theory that it is the state, not the national government, that provides the orderly climate in which the commerce thrives, then it would appear that there can be no distinction between the benefit that Oregon afforded plaintiff with respect to a truckload of goods consigned from Portland to Klamath Falls than the benefit afforded when one of plaintiff's trucks traversed the same route but went through Klamath Falls destined for San Francisco. Even the opinions of the Supreme Court which are most restrictive upon the power of the state to tax any form of interstate commerce recognize some power in the state to tax for benefits bestowed so long as the tax does not hamper the flow of commerce. See *Freeman v. Hewit,* 1946, 329 US 249, 255, 67 S Ct 274, 91 L Ed 265.

We are satisfied that the rule we have applied is sound in law and practice. It is in harmony with many of the decisions of the Supreme Court of the United States, some of which we have cited. In addition see *Interstate Pipe Line Co. v. Stone,* 1948, 337 US 662, 69 S Ct 1264, 93 L Ed 1613; *Harvester Co. v. Evatt,* 1946, 329 US 416, 67 S Ct 444, 91 L Ed 390, and *Maine v. Grand Trunk R'y Co.,* 1891, 142 US 217, 12 S Ct 121, 35 L Ed 994. The reference to these, as well as other cases referred to in this opinion, should not be taken to mean that we have not examined all of the cases cited by plaintiff. We have done that and examined other authority as well. No one would be wiser if we would extend this opinion to the extent necessary to mention each case. The judgment is reversed.