Argued March 8, reversed with directions April 18, 1962

# STANDARD INSURANCE COMPANY *v.* STATE TAX COMMISSION

### 370 P. 2d 608

*Herbert C. Hardy,* Portland, argued the cause for

appellant. With him on the briefs were Cake, Jaureguy, Hardy, Buttler & McEwen, Portland.

*Ira W. Jones,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Robert Y. Thornton, Attorney General and Donald H. Burnett, Assistant Attorney General, Salem.

Before McALLISTER, Chief Justice, and ROSSMAN, PERRY, SLOAN, O'CONNELL and GOODWIN, Justices.

SLOAN, J.

Plaintiff appeals from an order and decree of the circuit court which affirmed an order of defendant subjecting plaintiff to the Oregon corporation excise tax. A recitation of the historical background of the case is necessary to explain the basis of our decision.

Plaintiff was originally organized as a capital stock life insurance company in 1906. In 1929 the legislature adopted an act which permitted such a company to change its form of organization to that of a mutual life insurance company. Plaintiff utilized the right created by the act and immediately changed from a stock company to a mutual life insurance company. It has since remained. It is the only domestic mutual life insurance company in Oregon. There have been no significant changes in the scope or character of its business since 1931. Its name has been changed from Oregon Mutual Life Insurance Company to Standard Insurance Company.

Also in 1929 the legislature enacted the first corporate excise tax act. Our consideration of this case requires that we particularly notice only the section of that act which granted exemptions to the tax im-

posed. We are concerned with subsection 11 (g) of Chapter 427, 622, Oregon Laws 1929. It read:

"Farmers' or other mutual hail, cyclone, fire or life insurance companies, mutual ditch or irrigation companies, mutual or cooperative telephone companies or like organizations of a purely local character, the income of which companies consists solely of assessments, dues and fees collected from the members for the sole purpose of meeting expenses."

That subsection, including subsequent amendments, is now codified at ORS 317.080 (8). It was last amended in 1957 and now reads:

"Farmers' or other mutual hail, cyclone, fire or life insurance companies, mutual ditch or irrigation companies, mutual or cooperative telephone or mutual or cooperative electric companies or like organizations, but only if 85 percent or more of the income of which companies consists of assessments, dues and fees collected from the members for the sole purpose of meeting expenses. The 1957 amendments to this subsection apply to all taxable years ending on and after August 3, 1955."

After the excise tax act was passed in 1929, representatives of plaintiff and defendant conferred in respect to plaintiff's status as an exempt business organization within the meaning of subsection 11 (g) above set out. Later, plaintiff filed a return for the year 1930 and claimed to be exempt. This return was answered by defendant with a letter dated April 1, 1931. This letter advised plaintiff that:

"Satisfactory evidence having been filed showing that Oregon Mutual Life Insurance Company comes within the class entitled to exemption under Section 11 (g) [now ORS 317.080(8)], no further return will be required until the nature of its busi-

ness changes, in which case a full report should be made to this office.

> Very truly yours,
> STATE TAX COMMISSION
> by /s/ RALPH WIRTH,
> Auditor"

That determination remained unchanged and unquestioned until some time in 1954 or 1955. Within those years it appears that defendant's auditors reviewed plaintiff's tax status and requested that returns be filed for all years after and including 1952.

In January 1956, a conference was held between representatives of plaintiff and the tax commissioner who was then charged with the responsibility of administering the income and excise tax division of defendant. In March 1956, that commissioner orally advised the president of plaintiff to "forget about the returns."

In 1958 defendant's representatives made further demand on plaintiff to file returns. In order to test the matter and to avoid any sanction that might be imposed, plaintiff filed returns for the years 1954 and 1957. At the same time it filed petitions for rebate and challenged the tax before the Commission. Following a hearing defendant, on May 2, 1959, entered an opinion and order adverse to plaintiff's claim of exemption. Plaintiff sought review in the circuit court with the result already mentioned.

Although decision has not been easy in this case, the issues presented are relatively direct and simple. The issue is: Does ambiguity exist in the corporation excise tax statutes when applied to the peculiar characteristics of this mutual life insurance company? Defendant contends that there is no ambiguity. And that since there is no ambiguity the court is not "permitted

to interpret that which has no need of interpretation." *State v. Young,* 1915, 74 Or 399, 403, 145 P 647. Defendant would, therefore, bar us from looking at the legislative history and administrative interpretations of the statutes. Plaintiff, of course, finds ambiguity in several aspects of the statutes. It insists that the entire act is unworkable in respect to plaintiff's business and that legislative history and administrative interpretation compel a construction of the statutes that would exclude plaintiff from the tax. The trial court agreed with defendant and held that no ambiguity was present. In a written opinion on the case the trial judge stated that if he were permitted to review the legislative history of the act he would have decided in favor of plaintiff. We take it that defendant would not seriously challenge that same conclusion.

Plaintiff first points to ORS 317.010 to demonstrate that it is not a corporation or taxpayer as defined in that section. Although a determination that plaintiff is within the definitions contained in ORS 317.010 is not free from doubt we conclude that the decision in *Cent. Lincoln P.U.D. v. State Tax Com.,* 1960, 221 Or 398, 405, 351 P2d 694, would bring plaintiff within the limits of those definitions. We turn our attention, then, to the exemption statute, ORS 317.080 (8). For this opinion we will look at the statute as it was amended in 1957. Material changes were made by the 1957 amendments but they do not change the basis for our decision. We should mention here, however, that the record before us of the legislative considerations of the 1957 amendments provides some evidence to support our judgment that the legislature intended plaintiff to be included in the exemption statute.

It is our conclusion that the exemption statute is not free from ambiguity. Specifically, we think a

question is presented as to whether or not the limitation that "85 percent or more of the income of which companies consists of assessments, dues and fees collected from the members, for the sole purpose of meeting expenses" qualifies the "Farmers' or other mutual hail, cyclone, fire or life insurance companies," who are exempt from the tax. We realize that if we were to look at the statute with blinders on and see nothing more than the words written in that particular section our decision might be otherwise. But we think that we must look to the facts available to us and to other statutes which define and govern the organization and operation of the insurance companies named in the exemption statute. 2 Sutherland, Statutory Construction, (Horack 3rd Ed., 1943), Ch 45 314 et seq; *Southern Pacific v. Brown et al.,* 1956, 207 Or 222, 231, 295 P2d 861; *Cabell v. Markham,* 148 F2d 737, 739 (2d Cir. 1945); *Borella v. Borden Co.,* 145 F2d 63, 64, 65 (2d Cir. 1945); *Tillinghast v. Tillinghast,* 25 F2d 531, 533, 534 (D.C.App. 1928).

For the convenience of the reader we again copy the pertinent subsection of the exemption statute, ORS 317.080 (8):

"Farmers' or other mutual hail, cyclone, fire or life insurance companies, mutual ditch or irrigation companies, mutual or cooperative telephone or mutual or cooperative electric companies or like organizations, but only if 85 percent or more of the income of which companies consists of assessments, dues and fees collected from the members, for the sole purpose of meeting expenses. The 1957 amendments to this subsection apply to all taxable years ending on and after August 3, 1955."

The statute lists five categories of business organizations that are to be exempt; some of them radically

different than others in purpose and statutorily permissible organization. They are: (1) mutual insurance companies; (2) mutual ditch and irrigation companies; (3) mutual or cooperative telephone companies; (4) cooperative electric companies; (5) like organizations. As stated, the problem is created by the qualifying words "but only if 85 percent or more of the income of which companies consists of assessments, dues and fees collected from members for the sole purpose of meeting expenses."

Reference to the statute as it was originally enacted in 1929 discloses that the qualifications then read: ". . . or like organizations of purely local character . . ." all of whose income was from dues and assessments collected from its members. The statute was amended in 1939 as well as in 1957. The 1939 amendment reduced the dues and assessment qualifications to 85 percent of the organization's total income. The 1957 amendment added the mutual or cooperative electric companies and eliminated the "purely local character" requirement.

We think that we cannot read this statute, either as originally adopted in 1929 or now, without regard to facts of which it appears the legislature was aware. Plaintiff was and is the only mutual life insurance company organized in Oregon. In 1929 its business was not of a local character nor did its income consist solely of dues, fees and assessments; nor has that been true at any time since then. Furthermore, an examination of the "General Insurance Law" of Oregon, Title 56, ORS indicates that none of the insurance companies specified in the exemption statute could have qualified if they were organized and operated as required by the General Insurance Laws. And, ORS 736.055 and 739.005 appear to prohibit anyone from

engaging in the insurance or life insurance business except as provided by the insurance law.

■ The reference to the General Insurance Laws, immediately above, should not be taken to mean that we are now making any interpretation or construction of any part of those statutes. Our only interest has been to see if there is any ambiguity between the kind of mutual insurance companies mentioned in ORS 317.080 (8), the exemption statute, and the kind of mutual insurance companies that can be organized within the requirements of the General Insurance Laws. We have examined the General Insurance Law only to ascertain if it permits the organization of any "farmers', mutual hail, cyclone, fire or life insurance company . . . 85 percent of whose income is derived from dues, fees and assessments." Our examination leads us to believe that such an organization is not contemplated by the General Insurance Law. We assume, therefore, that no mutual insurance company organized in Oregon could meet the qualifications contained in the exemption statute if it were held that the limitation of the 85 percent of income to dues, fees and assessments referred to the insurance companies named in the exemption statute. It would appear, then, that if the qualifications of dues, fees and assessment income is to be applied to the insurance companies none would or could qualify and the legislative exemption would have been futile and useless. This, of course, would be particularly true of plaintiff. A legislative act is not to be deemed meaningless. *Blyth & Co., Inc. v. City of Portland*, 1955, 204 Or 153, 159, 282 P2d 363.

We are not now required to decide which of the forms of organizations named in ORS 317.080 (8) are included within the qualification that 85 percent of their income must be from dues, fees and assess-

ments collected from members. All we now hold is that the statute is ambiguous and requires construction to decide. It cannot be held to be clear and unquestioned from the language of the statute itself.

When that conclusion is reached it is not difficult to find that the legislative history of this statute demonstrates a legislative intent that plaintiff was and is exempt. This is made particularly manifest in this case because of the early administrative determination of exemption which was unchallenged and unquestioned for more than twenty years either by defendant or the legislature. The unique factual situation presented by this case makes it clear that this was not a matter of oversight or misunderstanding on the part of the defendant or the legislature. There is evidence of a specific intent that plaintiff was to be treated as exempt.

This case has considerable similarity to certain aspects of *Union Pac. R.R. Co. v. Anderson,* 1941, 167 Or 687, 709, 120 P2d 578, wherein Justice LUSK, for the court said:

"* * * Here the construction of the law, or perhaps it might be more accurate to say the application of a provision of the law to a particular state of facts, has been by those who are governed by its provisions in a special and immediate way, and on the part of the defendants there has been acquiescence for this period in the position assumed by the plaintiff."

The language found in *Butler v. State Ind. Acc. Com.,* 1958, 212 Or 330, 340, 318 P2d 303, is similar to that expressed in many cases:

"* * * On a question as close as this, . . . we think that the contemporaneous, administrative interpretation over a long period of time should turn the scale."

We think this to be a strong case of contemporaneous construction by an administrative body acquiesced in by the legislature in subsequent reenactment. *Gouge v. David et al,* 1949, 185 Or 437, 462, 202 P2d 489.

Defendant attempts to circumvent the force of the administrative determination by arguing that the letter of 1931 allowing the exemption was signed by an auditor of defendant and that there is no showing that the auditor was authorized to write the letter. The argument has been refuted in two ways: One, the long acquiescence of defendant under circumstances, before mentioned, which makes it difficult, if not impossible, to believe that the ruling did not express the will of those in authority within defendant tax commission. Two, at the trial of this case before the circuit court, defendant made the same contention. The court advised defendant's counsel that he would hold the case open for an extended period of time to permit defendant to bring in evidence to show that the letter ruling was unauthorized. Otherwise, the court ruled, he would take the ruling to be authoritative. No further evidence was presented although it appears from the record that the passage of time had not precluded defendant from establishing that the letter was either not authorized or not ratified by acquiescence if such were the fact. Under these circumstances we think defendant is actually foreclosed from arguing the issue here. In addition, we think that within the particular circumstances of this case, the letter of 1931 was *prima facie* evidence of an authoritative ruling and that the burden rested on defendant to establish that it was not.

In 50 Am Jur Statutes, § 269, 258, we find this statement: "In construing statutes qualifying words, phrases, and clauses are ordinarily confined to the last antecedent or to words and phrases immediately pre-

ceding." (Footnotes omitted). We do not say that the quoted rule is good or bad or necessarily has application to this statute. We cite it to show only that whoever participated in the defendant's 1931 determination could have considered the rule as having application to the statute at hand. We cite the reference for no other purpose.

■ Unlike *Butler v. State Ind. Acc. Com.*, supra, this is not a case of "grave public consequence . . ." It involves only one taxpayer. More extended discussion is not required. As before expressed, we find a clear legislative intent to exempt plaintiff from the corporation excise tax. If we misread that intent, the legislature can readily correct it. See 2 Sutherland, Statutory Construction, (Horack 3rd Ed., 1943), § 4503, 319. The order and decree of the circuit court is reversed with directions to set aside the order of defendant and to enter judgment for plaintiff upon its claims for abatement of the tax.