Argued October 6, 1965, affirmed January 26, 1966

# CAL-ROOF WHOLESALE, INC. *v.* STATE TAX COMMISSION

410 P. 2d 233

*Theodore W. deLooze,* Assistant Attorney General, Salem, argued the cause for appellant. With him on the briefs were Robert Y. Thornton, Attorney General, and Gerald F. Bartz, Assistant Attorney General, Salem.

*Thomas S. Moore,* Portland, argued the cause for respondent. With him on the brief were Maguire, Shields, Morrison, Bailey & Kester, Portland.

Before McAllister, Chief Justice, and Perry, Sloan, Goodwin, Denecke, Holman and Schwab, Justices.

SCHWAB, J. (Pro Tempore).

The Oregon State Tax Commission appeals from a decree of the Oregon Tax Court, 2 OTR Adv Sh 55, setting aside assessments of additional corporation excise taxes made by the State Tax Commission against Cal-Roof Wholesale, Inc., an Oregon corporation, for the tax years 1959, 1960 and 1961.

The question may be stated: Does the taxpayer, an Oregon corporation engaged in certain limited activities in the state of Washington, qualify to ex-

clude from its net income subject to Oregon excise tax that portion of its income attributable to its activities in the state of Washington?

The plaintiff, Cal-Roof Wholesale, Inc., an Oregon corporation, is a distributor of building materials with warehouses in Oregon. The record does not show its gross income for the years in question, 1959, 1960 and 1961. However, in 1963 its total sales were about $2,800,000—approximately $250,000 of its sales being in Washington and the remainder in Oregon. The plaintiff's Washington operations were carried on by a salesman living in Washington. His chief activity was the solicitation of orders which were approved in the Oregon home office. Most deliveries of goods were made from Oregon in trucks leased by the plaintiff in Oregon. The plaintiff's Washington salesman operated entirely within the state of Washington and lived there but maintained no office except for his home. Plaintiff customarily entered into cooperative advertising agreements in Washington with its Washington customers. In addition to his principal activity, soliciting orders, the Washington salesman on numerous occasions collected delinquent accounts, made pick-ups of merchandise which customers desired to return, and customarily carried with him a supply of small items which he sold and delivered within the state of Washington. Also, he was authorized to and did on some occasions give spot credit and accept orders rather than submit them to the home office in Oregon for approval.

By virtue of ORS chapter 317 (corporate excise tax law) and ORS chapter 318 (corporate income tax law) Oregon levies a six per cent tax on corporate income attributable to Oregon activities if the Oregon activities of the corporation are sufficient to establish

nexus. This is so whether the activities are intra-state or inter-state.

The position of the taxpayer, Cal-Roof Wholesale, Inc., is that under the provisions of ORS 314.280 (the apportionment statute pertaining to corporate excise tax, corporate income tax, and personal income tax), in determining the net income on which it must pay tax to Oregon, it may deduct the amount attributable to its Washington activities whether its Washington activities were "intra-state" or "inter-state."

The position of the tax commission is that ORS 314.280 must be construed to mean that the taxpayer can not deduct from the net income on which it pays a tax to Oregon that portion attributable to its Washington activities unless those activities were "intra-state" as distinguished from "inter-state."

■ An examination of statutory and case law leads us to conclude that the taxpayer's position is correct. The growth of an economic system in the United States which transcends and largely ignores state boundaries and yet is superimposed upon a political system of sovereign states has created many as yet unresolved problems. In no area have these conflicting concepts created greater chaos than in the field of taxation. Many of the vast array of federal decisions in this field make subtle distinctions without readily apparent differences, as vigorous and pungent dissents which appear to be more the rule than the exception seek to demonstrate.

In 1958 the U. S. Supreme Court, in *Northwestern Cement Co. v. Minn.*, 358 US 450, 457, 79 S Ct 357, 3 L Ed2d 421, 67 ALR2d 1292, said:

"* * * Commerce between the States having grown up like Topsy, the Congress meanwhile not

having undertaken to regulate taxation of it, and the States having understandably persisted in their efforts to get some return for the substantial benefits they have afforded it, there is little wonder that there has been no end of cases testing out state tax levies. The resulting judicial application of constitutional principles to specific state statutes leaves much room for controversy and confusion and little in the way of precise guides to the States in the exercise of their indispensable power of taxation. * * *"[1]

Since that time Congress, in an effort to cut through the tangled undergrowth of state taxation, has enacted a statute providing that Senate and House committees should proceed to make a complete study of taxation of income derived from inter-state commerce. One of these Congressional committees has recently concluded a four-year study with a 2,000-page report which recommends "the enactment of a Federal statute to bring uniformity and order into the chaos." Benjamin B. Taylor, Jr., Willis Report on Interstate Taxation: New Laws to Make Sweeping Changes, 23 (No. 6), Journal of Taxation 374 (Dec. 1965).

In 1929 Oregon enacted its corporate excise tax law, ORS chapter 317. The imposition provision, ORS 317.070, reads:

"(1) * * * [E]very mercantile, manufacturing and business corporation doing or authorized to do business within this state * * * shall annually pay to this state, for the privilege of carrying on or doing business by it within this state, an excise tax according to or measured by its net income, * * * at the rate of six percent."

---

[1] Quoted by this court speaking through Sloan, J., in Ore.-Nev.-Calif. Freight v. Tax Com., 223 Or 314, 320, 353 P2d 541.

In 1939 this court, in *Welch Holding Co. v. Galloway,* 161 Or 515, 527, 89 P2d 559, interpreted the legislative definition of "doing business" in the common and usual meaning of the phrase, "the engaging in activities in the pursuit of gain." The opinion made no distinction between intra-state activities and inter-state activities in pursuit of gain.

In 1951 the U. S. Supreme Court, in *Spector Motor Service v. O'Connor,* 340 US 602, 71 S Ct 508, 95 L Ed 573, held that an excise or privilege tax measured by income upon the franchise of a foreign corporation for the privilege of doing business is invalid if that business is not engaged in intra-state commerce as distinguished from inter-state commerce. Oregon's excise tax, if not previously limited by the long line of "drummer" cases beginning with *Robbins v. Shelby Taxing District,* 120 US 489, 7 S Ct 592, 30 L Ed 694 (1887), was clearly limited by the *Spector* decision to intra-state business.[2] The *Spector* decision has been criticized for its emphasis on the importance of labels in determining the validity of a state tax. *Ore.-Nev.-Calif. Freight v. Tax Com.,* 223 Or 314 at 322, 353 P2d 541. It is pointed out by numerous authorities, including Justice Clark's dissent in the *Spector* case, that if the same tax had been labeled as an income tax based on income rather than an excise tax measured by income, it would not have been held unconstitutional as imposing an undue burden on inter-state commerce. Nevertheless, the majority opinion governs and from the date of that decision, if not before, Oregon could not constitutionally impose its excise tax on the activi-

---

[2] This issue is not involved here, and in any event it is probably not a matter of concern since the enactment of the Oregon corporate income tax, ORS chapter 318, in 1955.

ties of foreign corporations within its boundaries, if such activities were purely inter-state.

In 1955 Oregon "plugged the loophole" which the *Spector* case emphasized by enacting a corporation income tax, ORS chapter 318, as a supplement to the excise tax, ORS chapter 317. The imposition statute, ORS 318.020, reads in pertinent part:

"(1) There hereby is imposed upon every corporation for each taxable year a tax * * * upon its net income * * * other than income for which the corporation is subject to the tax imposed by the Corporation Excise Tax Law of 1929 (ORS chapter 317) * * *, the tax rate shall be six percent."

In 1957 the legislature repealed ORS 317.080, the apportionment section of the excise tax law,[9] and also ORS 316.205, which was the apportionment section of the personal income tax law. The repealer was Section 1, Chapter 632, Oregon Laws 1957. Section 2 thereof provided, "Sections 3 to 39 of this act are applicable to all laws of this state imposing taxes upon or measured by net income." Section 4 of Chapter 632 became the new apportionment law applicable to all forms of tax on income, personal and corporate. Codified as ORS 314.280, it reads:

"(1) If the gross income of a corporation or a nonresident individual is derived from business done both within and without the state, the determination of net income shall be based upon the business done within the state, and the commission shall have power to permit or require either the segregated method of reporting or the apportionment method of reporting, under rules and regulations

---

[9] When the legislature enacted the corporate income tax in 1955, by reference it incorporated into the income tax law ORS 317.080.

adopted by the commission, so as fairly and accurately to reflect the net income of the business done within the state.

"(2) The provisions and subsection (1) of this section dealing with the apportionment of income earned from sources both within and without the State of Oregon are designed to allocate to the State of Oregon on a fair and equitable basis a proportion of such income earned from sources both within and without the state. * * *"

The principal thrust of the tax commission's argument is that the corporate excise tax and the corporate income tax must be considered as two wholly separate taxes; that the apportionment statute must be considered as allowing a corporation paying an Oregon excise tax to apportion only net income derived from "intra-state" business in other states, and separately as allowing corporations paying an Oregon income tax to apportion only net income derived from "inter-state" business in other states. The commission argues that only with such interpretation is Oregon's excise tax law constitutional under the commerce clause of the U. S. Constitution. We find the contrary.

■■ The position the tax commission espouses is one which would present grave doubts as to the constitutionality of our corporate tax law or at least doubts as to the constitutionality of either the excise or the income tax component. It is agreed that Cal-Roof is engaged in intra-state business in Oregon and is subject to the Oregon excise tax. Assuming that Cal-Roof's Washington activities are inter-state in nature, under the tax commission's theory Cal-Roof would pay an excise tax to Oregon at the rate of six per cent on all of its net income—and it would also pay an income tax to the state of Washington at the rate of six per cent on that portion of its total net income

attributable to its business activities in Washington. No matter what labels are applied, such a result would be double taxation and contra to the doctrine set forth in *Gwin Etc. v. Henneford*, 305 US 434, 59 S Ct 325, 83 L Ed 272, and

> "Certain things are fairly clear. One is that a formula should be held invalid on its face if its adoption in all states would result in double or multiple taxation. For example, if the formula assigns to the taxing state the income from all sales of goods, shipped to customers (wherever located) from stocks in the state, plus the income from all sales of goods (wherever located) shipped to customers in the state, the formula would catch all sales coming or going. If every state had such a formula, 200 per cent taxation of interstate income would be assured. At the same time, intrastate income would be taxed only to the extent of 100 per cent." Beaman, Paying Taxes to Other States 3.20 (1963).

> "* * * A statute must be construed, if fairly possible, so as to avoid not only the conclusion that it is constitutional, but also grave doubts on that score: Panama Ry. Co. v. Johnson, 264 U.S. 375 (68 L.Ed. 748, 44 Sup. Ct. Rep. 391)." *Wadsworth v. Brigham et al.,* 125 Or 428, 465, 259 P 299, 266 P 875.

Each part or section of a statute should be construed in connection with every other part or section so as to produce a harmonious whole. 2 Sutherland, Statutory Construction § 4703 (3d ed 1943); Crawford, Statutory Construction § 166 (1940). That this rule applies to construing two statutes in relation to each other is made apparent in Crawford where a corollary rule under this general directive is said to be stronger "where the conflict is between two statutes." Crawford, Statutory Construction § 166, at page 264.

■ Furthermore, apart from the issue of constitutional interpretation, the language of the pertinent statutes, the chronology of their enactment, and the judicial decisions extant at the time of their enactment all point to the conclusion that the intention of the legislature was not to enact a corporation income tax law as a separate entity and for a purpose other than that for which it had enacted the corporation excise tax law. Both are revenue producing statutes and the obvious legislative purpose was to create a corporate tax structure which taxed at a uniform rate all corporate income derived from activities within the state in the pursuit of gain. The sole purpose of separately labeling the component parts of this structure as "income" and "excise" was to meet the requirements of the *Spector* case, supra.

As an additional argument the tax commission, relying upon *Standard Insurance Company v. Tax Com.,* 230 Or 461, 370 P2d 608, says its consistent administrative interpretation of the relevant statutes should be given weight. The rule urged by the tax commission is a proper one, but its application militates against the position the tax commission is taking.

On January 22, 1965, after this case was in litigation, the commission promulgated Regulation 314.280 (1)-(A)④ which it contends reflects its present position. This regulation, however, superseded its Regulation 4.280 promulgated on January 29, 1959, after the legislature's enactment of ORS 314.280 (the present apportionment statute) at the 1957 session. Regula-

---

④ "If a taxpayer (a) is subject to ORS chapter 317 and carries on business both within and without this state, or (b) is subject to ORS chapter 318 and has activity both within and without the state, the tax is measured by the portion of the net income properly attributable to this state. * * *"

tion 4.280, without distinguishing between corporate excise taxpayer and corporate income taxpayer, read:

> "If a taxpayer carries on business or activity both within and without the state, the tax is measured by the portion of the net income properly attributable to this state."

Although the commission, by substituting Regulation 314.280 (1)-(A) for Regulation 4.280, purportedly changed its administrative interpretation of the apportionment statute in 1965, it did not change that portion of its regulations applying the sales factor under the apportionment statute. In dealing with sales in other states as a factor in reducing taxes due Oregon, the commission, as it had in its previous regulations, continues to state in its current Regulation 314.280 (1)-(B):

> "For the purposes of this sales factor definition, a taxpayer is taxable in another state if the taxpayer would be required to pay a tax *based upon* or *measured by* net income in that state if that state adopted the *tax laws* of this state \* \* \*." (Emphasis supplied)

In tax parlance a corporation tax "measured by income" is an excise tax; a tax "based upon income" is an income tax. The only reasonable interpretation that can be placed upon these words is that the tax commission, which is charged with administration of Oregon's tax laws has, until taking the position it has taken in this case, by its own regulations consistently interpreted ORS 314.280 to mean: A corporate taxpayer is entitled to apportion its net income to another state if, on the assumption that the other state had the corporate income and excise tax laws that Oregon has, it would be required to pay a tax, either income or excise, to that other state.

Even in dealing with the particular issue and the particular taxpayer here involved, the tax commission administratively interpreted ORS 314.280 in the manner it now disavows. In accordance with statutory procedures, prior to filing suit in the tax court, the plaintiff sought and obtained a hearing before the tax commission. The tax commission, in denying plaintiff the right to apportion, in its opinion and order of February 28, 1964, stated:

> "It is our opinion that Cal-Roof Wholesale, Inc., has not established *nexus* in Washington and is not entitled to apportion their income between Washington and Oregon." (Emphasis supplied)

In the tax commission's brief we find the following statement discussing *Northwestern Cement Co. v. Minn.*, 358 US 450, 79 S Ct 357, 3 L Ed2d 421, 67 ALR2d 1292:

> "The new legal concept added to the law by the Northwest States case was that of 'nexus,' or the idea that a corporation had to have only minimum contact with the state before income tax jurisdiction can be asserted."

By its opinion, applying its regulations adopted pursuant to statutory directive, the tax commission in so many words held that the criterion for apportionment to Washington was not "intra-state" business in Washington but "nexus."

■ Plaintiff's Washington activities clearly establish sufficient contact (nexus) with the state of Washington to allow that state, using Oregon's corporate income tax law, to impose a tax on that portion of plaintiff's income attributable to its Washington activities. *American Refrigerator Transit v. Tax Com.*, 238 Or 340, 395 P2d 127.

The tax commission argues that Washington has no net income tax and also that the effect of Public Law 86-272 is to make the plaintiff here exempt from taxation by the state of Washington even if that state would enact a net income tax act. As the tax commission has consistently recognized by its regulations, the test of constitutionality is not based on tax laws the state of Washington has actually enacted.

■ In any event, the tax commission's analysis of our decision in *Smith Kline & French v. Tax Com.*, 241 Or 50, 403 P2d 375, as a "broad" interpretation "of solicitation" as the word is used in Public Law 86-272, is not warranted. Without mentioning the terms "inter" or "intra," Public Law 86-272 prohibits the imposition of a state tax on income

"* * * if the *only* business activities * * * within such state * * * are * * *

"(1) the solicitation of orders by such person, or his representative, in such State for sales of tangible personal property, which orders are sent outside the State for approval or rejection, and, if approved, are filled by shipment or delivery from a point outside the State: and

"(2) the solicitation of orders by such person, or his representative, in such State in the name of or for the benefit of a prospective customer of such person, if orders by such customer to such person to enable such customer to fill orders resulting from such solicitation are orders described in paragraph (1)." (Emphasis supplied)

The application of Public Law 86-272 is not predicated upon judicial distinction between inter or intra-state activities. The constitutional power of Congress to regulate inter-state commerce carries with it the power to regulate state taxation of intra-state activities if such tax affects inter-state commerce. See cases cited

in *Smith Kline & French v. Tax Com.*, supra. Paragraph (2) of the 1959 federal statute prohibits state income taxation of the precise business activities which the U. S. Supreme Court in 1917 held intra-state in nature. *Cheney Brothers Co. v. Massachusetts*, 246 US 147, 153, 38 S Ct 295, 62 L Ed 632.

Activities substantially identical to the Oregon activities of Smith Kline & French Laboratories were held intra-state in nature in *Eli Lilly & Co. v. Sav-on-Drugs*, 366 US 276, 81 S Ct 1316, 6 L Ed2d 288 (1961). The particular facts of the *Smith Kline & French* case, not consideration of the label to be applied, made the prohibition of Public Law 86-272 there applicable. Thus, our decision in that case can not properly be construed as deciding that all business activities which are inter-state as distinguished from intra-state fall within the scope of Public Law 86-272. It is not necessary to consider what the result would be in this case if Cal-Roof's Washington activities fell within the prohibition of Public Law 86-272. While we need not and do not here decide whether plaintiff's activities in Washington were wholly inter-state or at least in significant part intra-state, its Washington activities clearly encompassed more than "solicitation" only.

Plaintiff is entitled to apportion its net income for the tax years 1959, 1960 and 1961, between the states of Oregon and Washington in such manner as will fairly and accurately reflect the net income of its business done within the state of Oregon.

Affirmed.