# SOUTHERN OREGON HEALTH SERVICE, INC. *v.* COMMISSION

Daniel A. Ritter, Harland, Winslow & Ritter, and Peter M. Gunnar, Salem, Oregon, represented the plaintiff.

Alfred B. Thomas, Assistant Attorney General, represented the defendant.

Decision for defendant rendered October 11, 1968.

EDWARD H. HOWELL, Judge.

The tax commission rejected plaintiff's claim for an exemption from corporate excise taxes and refused to grant a refund for taxes paid for the years 1962 through 1966. Plaintiff appealed.

The plaintiff, organized as a nonprofit corporation since 1961, provides health and accident insurance to its members. It has offices in Grants Pass, Roseburg and Medford.

The issue is whether plaintiff qualifies for an exemption under ORS 317.080(8) which exempts certain organizations from corporate excise taxes. Among the exempt organizations are:

"(8) Farmers' or other mutual hail, cyclone, fire or life insurance companies, mutual ditch or irrigation companies, mutual or cooperative telephone or mutual or cooperative electric companies or like organizations, but only if 85 percent or more of the income of which companies consists of assessments, dues and fees collected from the members for the sole purpose of meeting expenses. * * *"

This subsection was first enacted in 1929 and appeared in the Oregon Code of 1930 as Section 69-1311(g).① It

---

① Sec. 69-1311(g), Oregon Code of 1930:

"Farmers' or other mutual hail, cyclone, fire or life insurance companies, mutual ditch or irrigation companies, mutual or cooperative telephone companies or like organizations of a purely local character, the income of which companies consists solely of assessments, dues and fees collected from the members for the sole purpose of meeting expenses."

The statute was amended in 1939 and 1957. Or L 1939, ch 489, § 5, Or L 1957, ch 553. The 1939 amendment reduced the dues and assessment qualifications to 85 percent of the organization's total income. The 1957 amendment added the mutual or cooperative electric companies and eliminated the "purely local character" requirement. *Standard Ins. Co. v. Tax Comm.*, 230 Or 461, 467, 370 P2d 608 (1962).

was apparently copied from § 231(10) of the Internal Revenue Code of 1924.[2]

■ It is a fundamental rule of judicial construction of tax exemption statutes that such statutes are subject to strict but reasonable construction. *Willamette Univ. v. Tax Com.*, 245 Or 342, 344, 422 P2d 260, 262 (1966); *Pac. Supply Coop. v. State Tax Com.*, 224 Or 556, 560, 356 P2d 939, 941 (1960). One seeking the benefit of an exemption statute must show that he comes clearly within the legislative intent of the statute. *Roy L. Houck & Sons v. Tax Com.*, 229 Or 21, 30, 366 P2d 166, 170 (1961). (Citing cases.)

The commission determined that plaintiff, as a health and accident insurance company, was not "like" a mutual life insurance company which is afforded the exemption by the statute.

In regard to the specific question of whether plaintiff is a "like organization" to "[F]armers' or other mutual hail, cyclone, fire or life insurance companies"

---

[2] § 231(10), Internal Revenue Code of 1924:

"Benevolent life insurance associations of a purely local character, farmers' or other mutual hail, cyclone, casualty, or fire insurance companies, mutual ditch or irrigation companies, mutual or cooperative telephone companies, or like organizations; but only if 85 per centum or more of the income consists of amounts collected from members for the sole purpose of meeting losses and expenses."

The Revenue Act of 1926, § 231(10) and § 231(11), divided the above subsection 10 of § 231 of the Revenue Act of 1924 into two sections to read as follows:

"(10) Benevolent life insurance associations of a purely local character, mutual ditch or irrigation companies, mutual or cooperative telephone companies, or like organizations; but only if 85 per centum or more of the income consists of amounts collected from members for the sole purpose of meeting losses and expenses;

"(11) Farmers' or other mutual hail, cyclone, casualty, or fire insurance companies or associations (including inter-insurers and reciprocal underwriters) the income of which is used or held for the purpose of paying losses or expenses."

the Internal Revenue Service has interpreted "like" to mean "similar to." Rev Rul 57-420, 1957-2 Cum Bull 308. The tax commission has made the same administrative interpretation. OF 2049, March 13, 1967.

■ Obviously an insurance company issuing health and accident insurance is not like a company issuing hail, cyclone or fire insurance. The remaining question is whether plaintiff is a like organization to a life insurance company which is mutual in character.

No state or federal cases have been cited or found that hold that a health and accident insurance company is like a life insurance company.[®]

■ Where an Oregon statute has been copied from federal law the Oregon courts will adopt the interpretation given the federal act by the federal courts, but "[I]n the absence of judicial construction, administrative construction is informative, and unless clearly at variance with the express terms of the statute, is entitled to respect." *Pac. Supply Coop. v. State Tax Com., supra.*

The Internal Revenue Service has ruled that a benevolent insurance company which issues policies covering sickness, health or accident *plus* death benefits is a "like organization" to a benevolent life insurance association mentioned in the federal statute.

---

[®] The Internal Revenue Service has ruled that a nonprofit organization which operates a two-way radio system is a "like organization" to a mutual or cooperative telephone company under the federal statute. Rev Rul 57-420, 1957-2 Cum Bull 308. The tax commission has taken the same position in holding that a corporation that provides radio communication services for its members is a "like organization" to a cooperative telephone company. OF 2049, March 13, 1967. In *Postal Mutual Indemnity Co. v. Comm.*, 3 TC 1212 (1944), the tax court interpreting § 231(11) of the Internal Revenue Act of 1926 referring to hail, cyclone, casualty or fire insurance companies (which did not include "like organizations"), held that a health and accident company was not included within the term "casualty" mentioned in the statute.

Rev Rul 2425, Cum Bull VII-2, 153.[④] See also *Allgemeiner Albeiter Verein v. Commissioner,* 25 TC 371 (1955), and 6 *Mertens, Law of Federal Income Taxation,* § 34.26, p 112. However, the Internal Revenue Service has also ruled that an insurance company which issued accident or casualty insurance plus death benefits is not like a life insurance company because the 1924 Internal Revenue Code did not include accident or casualty companies with life insurance companies. Rev Rul IT 2113, 1924-1926, Cum Bull III-II, 232.

■ There are several important distinctions between a life insurance policy and a health and accident policy. In a life policy the event insured against is certain and the policy is written in anticipation of the payment of the full amount of the insurance. When death occurs the amount due under the policy is immediately known. In a health and accident policy the event insured against is not certain and may never occur. Moreover, the amount of the liability to the insured is not immediately known when the event occurs. If a company issues both health and accident insurance plus death benefits it would be similar to a life insurance company because of the death benefits allowed. Rev Rul 2425, Cum Bull VII-2, 153, *supra.* On the other hand, a company writing only health and accident insurance would not be "like" a life insurance company because of the absence of any death benefits.

The plaintiff has not demonstrated that it comes clearly within the legislative intent of the exemption statute by showing that a health and accident company is like a life insurance company.

---

[④] The federal ruling was declared obsolete in 1967, but no specific reason was given. Rev Rul 67-46, 1967-1 Cum Bull 377.

In addition to being dissimilar to a life insurance company the plaintiff cannot be classified as a mutual company.

A mutual insurance company is an association of persons having the objective of obtaining insurance substantially at cost. *Mutual Fire, Marine & Inland Insurance Co. v. Commissioner,* 8 TC 1212, 1217 (1947), citing *Keystone Mutual Casualty Co. v. Driscoll,* 44 F Supp 658 (WD Penn 1942); 29 AFTR 393, *aff'd,* 137 F2d 907, (3d Cir 1943), 31 AFTR 597.

In *Mutual Fire, Marine & Inland Insurance Co. v. Commissioner, supra,* the characteristics of a mutual insurance company were defined as:

1. The common equitable ownership of the assets by the members;

2. The right of all policyholders to be members to the exclusion of other persons and to choose the management;

3. The conduct of the business to the sole end that the cost of the insurance be reduced;

4. The right of the members to a return of the premiums paid in excess of the amounts necessary to cover losses and expenses.

It is undisputed that the plaintiff meets the first two qualifications listed above because there is a common equitable ownership of assets by the members, and the insured members, to the exclusion of all others, choose the management of the company. The most important question is whether plaintiff meets the other qualifications of being in the health and accident insurance business for profit or solely to reduce the cost of insurance to its members.

"It has been said that such a [mutual] company is not in business or trade in the ordinary acceptance of these terms, and exists, not for profit, but

solely to reduce the cost of insurance to its members." *Mutual Fire, Marine & Inland Insurance Co. v. Commissioner, supra,* at 1217.

■ "It is of the essence of mutual insurance that the excess in the premiums over the actual cost as later ascertained shall be returned to the policyholder." *Penn Mutual Ins. Co. v. Lederer,* 252 US 523, 525, 40 S Ct 397, 399, 64 L ed 698, 700, 3 AFTR 3061, 3062 (1920).

■ In order for plaintiff to qualify as a mutual company any excess over the cost and expenses should be returned to the members in some form. Obviously a cash refund or dividend would be acceptable. However, this is not necessary, and a dividend may be made by decreasing or abating the premium. *Penn Mutual Life Ins. Co. v. Lederer, supra,* at 528.

■ While the basic concept of mutual insurance is furnishing such insurance at cost, a reasonable reserve may be maintained for the sole purpose of paying expenses and losses. *Thompson v. White River Burial Ass'n.,* 178 F2d 954 (8th Cir 1950), 38 AFTR 1243, 50-1 USTC ¶ 9139. A reserve used for increasing business, widening the territory and competing with other insurance companies is not allowable. *Keystone Mutual Casualty Co. v. Driscoll, supra.* The determination of the amount of the surplus to be retained for expenses and losses or returned to the members is largely within the discretion of the management of the company. *Thompson v. White River Burial Ass'n., supra.*

The plaintiff has never made a cash distribution of surplus to the members of the company. However, the plaintiff's accountant testified that it has accomplished the same result by not increasing the membership dues and by increasing the medical and hospital

benefits. He also testified that if plaintiff had made a cash distribution it would have had to increase the dues to cover the rising cost of medical and hospital services.

The plaintiff's accountant also testified that the plantiff's reserves were not in excess of the reserves required by the Insurance Commissioner but this is not supported by the evidence. He testified as follows on cross-examination:

"Q What's the difference? Take the year 1967, your two estimates, as I take it, equal $233,000 and your surplus is $401,000. What's the difference?

"A You should have—it's $233,000 plus the statutory reserves of $25,000, and of course we would also pick up some accrued asset items that is not reflected on a cash basis, so our report to the Insurance Commissioner for the end of '67 showed an unassigned reserve of $198,000.

"Q And the Insurance Commissioner doesn't require that?

"A We don't think so, but—

"Q Well, why isn't that money returned to the members?

"A Why isn't that money returned to the members?

"Q Right. This is what you would call an excess reserve, would you not?

"A Excess reserve? A—like I say, these figures I quoted on the benefits are strictly an estimate which we estimated the best we could.

"Q Well, that totaled your actual—

"A Because our reserves have—unassigned reserves—have built up I talked this over with the Board of Directors on the build-up on the excess reserve forestalled any increase in premiums. All of the costs are going up because everyone of the membership plans have a built-in escalation on it where they are paying a certain percent of a bill.

292

"Q If they deduct a more realistic basis, isn't it a fair statement that the membership dues in every year could be decreased, isn't that correct? The membership dues in fact could be decreased by this excess surplus each year and you'd be current, isn't that correct? To meet your reserve requirements and expenses of the corporation?

"A We've given a lot of thought to that, Mr. Thomas—we've

"Q I'm asking you if that isn't a fact—

"A — we've discussed it—

"Q — that it could be?

"A It could be, you're right. But when we start talking about how much could it be, is it good to—in other words, let's say that we drop the membership—Can I recite our discussion? I pay $15.00 a month for coverage for my wife and my family and myself.

"Q Right—

"A And if we could cut that five percent, what are we talking about, 75 cents? Or would it be better to—and then next year raise it 75 cents?"

It cannot be determined from the above testimony whether the witness was generalizing regarding the amount of the refund because there was no evidence offered about the number of members or the amount of the policies the company had in force.

The record in this case is not sufficient to sustain the burden of proof requiring the plaintiff to show that it qualifies for the exemption as a mutual company. There was no showing concerning the actual amount of reserves required by the Insurance Commissioner. A reserve of $198,000 (if that is the reserve) may be large or small depending on the circumstances. There was no showing regarding the extent of the hospital and medical coverage provided in 1966 as compared to 1962, or a comparison of the costs during that period.

There was no analysis of the premiums earned, losses and expenses, gain or loss and the surplus during the period 1962 to 1966. (See *Snake River Mutual Fire Insurance Co. v. Neill,* 80 Ida 534, 336 P2d 107 (1959)).

This Court cannot conclude from the record that the plaintiff is in the health and accident insurance business for the sole purpose of reducing the cost of insurance to its members. *Penn Mutual Ins. Co. v. Lederer, supra.*

The order of the commission denying the exemption is affirmed.