## SPECTOR MOTOR SERVICE, Inc. v. McLAUGHLIN.

### Civ. No. 723.

United States District Court
D. Connecticut.

Oct. 18, 1949.

Cyril Coleman, Day, Berry & Howard, Hartford, Conn., for plaintiff.

Frank Flood, Assistant Attorney General, State of Conn., for defendant.

SMITH, District Judge.

This action was brought under the name of Spector Motor Service, Inc., v. McLaughlin by complaint filed March 9, 1942 by plaintiff, an interstate motor truck freight carrier, to enjoin the then State Tax Commissioner of Connecticut from proceeding against the plaintiff under the Connecticut Corporation Business Tax Act, Gen.St.Supp.1939, § 354e, and for declaratory judgment of non-liability. This Court, by judgment filed December 21, 1942, granted the relief sought, on the theory that the tax, if intended to be applied to a carrier in the position of the plaintiff, was a tax on

the privilege of doing solely interstate business, prohibited by the Commerce Clause, Article 1, Section 8, of the federal Constitution. This Court, therefore, construed the Tax Act as not intended to apply to one in the position of the plaintiff. 47 F.Supp. 671.

The Circuit Court of Appeals for the Second Circuit reversed by judgment entered January 20, 1944, ordering judgment for the defendant on the merits, holding that the trend of decisions on state tax cases attacked under the Commerce Clause made it apparent that the Supreme Court would uphold such a tax as the instant one applied to the plaintiff, that it was intended to apply to the plaintiff and, as so applied, not in violation of the state or federal Constitutions. The Court stressed the fairness of the method of allocation of the tax to income derived from business originating within the state and concluded that the Supreme Court would look beyond the formal classification of the tax as one upon the privilege of doing an interstate business, and uphold it as a fair charge upon the taxpayer for the state's services to it. Spector Motor Service v. Walsh, 139 F.2d 809.

The Supreme Court granted certiorari, 322 U.S. 720, 64 S.Ct. 1155, 88 L.Ed. 1560, and by mandate dated January 7, 1945, vacated the judgment of the Circuit Court of Appeals and remanded the cause to this Court with directions to retain the bill pending the determination of proceedings to be brought with reasonable promptitude in the state court in conformity with the opinion of the Supreme Court dated December 4, 1944, holding that the federal Courts should defer determination of the constitutionality of the state tax act until the state courts had an opportunity to determine the application and constitutionality of the act as applied to the plaintiff under local law. 323 U.S. 101, 65 S.Ct. 152, 89 L.Ed. 101.

Action for declaratory judgment was brought in the Superior Court for Hartford County by writ and complaint dated December 21, 1944. The Superior Court entered judgment on August 14, 1947, Judge Comley holding that the Act was intended to apply, and does apply, to the plaintiff as a carrier engaged exclusively in interstate commerce, that, as so applied, it is unconstitutional and void as in violation of the Commerce Clause, Article 1, Section 8, of the federal Constitution, that, as applied to the plaintiff, the Act is not unconstitutional and void under the Connecticut Constitution, and that the assessments made by the defendant are not illegal because computed on an improper base. 15 Conn.Supp. 205.

The Supreme Court of Errors, by its decision of July 21, 1948, sustained the judgment except insofar as it held the Act to be violative of the Commerce Clause of the federal Constitution, considering that, in the course of this litigation, the Supreme Court intended that question to be determined by the federal Courts. Spector Motor Service v. Walsh, 135 Conn. 37, 61 A. 2d 89. The Supreme Court of Errors in its opinion undertook to answer the questions as to the interpretation of the Act posed by the opinion of the Supreme Court of the United States in this action.

Thereafter, on February 11, 1949, defendant moved in this court for dissolution of the injunction entered herein on December 21, 1942. It was decided by the parties that no further evidence would be submitted, and the motion to dissolve the injunction is before the Court on briefs, of which the last were submitted October 8, 1949.

At the outset we must determine whether this Court should pass upon the motion on its merits, due to the uncertainty which existed as to the adequacy of the state court remedy at the time when this action was instituted, see opinion of the Circuit Court of Appeals, 2 Cir., 139 F.2d 809, 820, although, for the future, the opinion of the Supreme Court of Errors may be said to remove the uncertainty and point to a remedy by action for injunction in the state courts.

The Supreme Court of Errors of Connecticut having held that there is a plain, speedy, and efficient remedy available to the taxpayer in this case, petitioner now urges that this fact defeats the jurisdiction of this court. Cases cited to the point, however, hold only that the question of jurisdiction may be raised at any time, and are confined to situations in which the original jurisdiction is attacked later in the trial.

■ This point has been considered and decided in Dawson v. Kentucky Distilleries & Warehouse Co., 1921, 255 U.S. 288, 41 S.Ct. 272, 65 L.Ed. 638, holding that jurisdiction to enjoin the collection of a state tax when the remedy in the state courts is uncertain is not defeated by a state decision settling the remedy subsequent to the institution of the suit for injunction.[1]

The next question is whether the interpretation of the Act by the Supreme Court of Errors requires a change in our opinion that, as applied to the plaintiff, it is a tax or excise upon the privilege of carrying on interstate commerce.

Of course, if the facts remain as found on the first trial, we would ordinarily be bound to follow the majority opinion of the then Circuit Court of Appeals as to the law applicable. This would not follow here, however, if the Supreme Court of Errors has so interpreted the Act in question as to alter some of the bases of the then Circuit Court's opinion. And since that opinion, on the law, is frankly based on a forecast of a changing trend of Supreme Court decisions, if any evidence of actual decisions in the field in the intervening years exists, is must be considered in order to forecast the probabilities at this time, and the earlier forecast can hardly be safely followed as the law of the case.

■ If we still consider that this tax is a tax or excise levied upon the privilege of doing a business solely interstate in nature, it would appear that a majority of the present Court would hold it in violation of the Commerce Clause—that is, the four justices who dissented in Interstate Oil Pipe Line Co. v. Stone, 337 U.S. 662, 69 S.Ct. 1264, and Mr. Justice Burton, who concurred in the judgment in that case solely on the ground that the commerce taxed was intrastate.

The opinion of the Supreme Court of Errors makes it plain that the tax was intended to be a franchise tax upon the privilege of doing business in the state.

There are cogent arguments in favor of permitting some form of nondiscriminatory taxation of interstate carriers to compensate the states for the services each renders to them. A tax upon the franchise to operate in interstate commerce, however, is an exaction for a privilege no state has the power to grant. To allow the states to go so far as formally to claim such a power cannot help but weaken the federal protection of the free flow of commerce over our state lines. Our dislike of sharp practice by carriers seeking to avoid a fair share of the tax load should not lead us to undermine it.

1. See opinion at page 295 of 255 U. S., at page 275 of 41 S.Ct. (Brandeis, J.): "The Attorney General insists that these bills in equity should have been dismissed because each plaintiff had a plain, adequate and complete remedy at law. * * * The plaintiffs, it is said, should have paid the tax under protest and have sued at law to recover the amounts so paid. But when these suits were brought (April and May, 1920) the decisions of the highest court of the state left it at least doubtful whether money so paid could have been recovered at law by the taxpayer * * *. It was not until November 16, 1920, which was after these appeals had been entered in this court, that Craig v. Security Producing & Refining Co., 189 Ky. 565, 568, 225 S.W. 729, settled that money paid under such circumstances could be recovered. * * * But, whatever remedies section 162 is now regarded as conferring, it is clear that at the time this suit was brought they were not regarded in Kentucky as sufficiently adequate to oust the jurisdiction of equity to enjoin the illegal collection of taxes. * * * Nor is the equitable jurisdiction lost because since the filing of the bill an adequate legal remedy may have become available. Beedle v. Bennett, 122 U.S. 71, 7 S.Ct. 1090, 30 L.Ed. 1074; Busch v. Jones, 184 U.S. 598, 22 S.Ct. 511, 46 L.Ed. 707."

Compare also the diversity-of-citizenship cases wherein it is held that jurisdiction depends on the facts at the time the suit is brought and is not divested by subsequent changes. Hardenbergh v. Ray, 1894, 151 U.S. 112, 14 S.Ct. 305, 38 L.Ed. 93; Mullen v. Torrance, 1824, 9 Wheat. 537, 6 L.Ed. 154, and a similar rule applied to patent infringement injunctions, Rice & Adams Corp. v. Lathrop, 1929, 278 U.S. 509, 49 S.Ct. 220, 73 L.Ed. 480; Clark v. Wooster, 1886, 119 U.S. 322, 7 S.Ct. 217, 30 L.Ed. 392.

We may take it that the opinions in the Pipe Line case indicate that the Court will still require the states to spell out a sound basis for their exactions from those engaged solely in interstate commerce other than the franchise to engage in such commerce.

The motion to dissolve the injunction is denied.