# SPECTOR MOTOR SERVICE, INC. *v.* O'CONNOR, TAX COMMISSIONER.

No. 132.  Argued November 29–30, 1950.—Reargued January 10, 1951.—Decided March 26, 1951.

*Cyril Coleman* argued the cause and filed a brief for petitioner.

*Louis Weinstein,* Assistant Attorney General of Connecticut, argued the cause for respondent. With him on the brief was *William L. Hadden,* Attorney General.

MR. JUSTICE BURTON delivered the opinion of the Court.

This proceeding attacks, under the Commerce Clause of the Constitution of the United States, the validity of a state tax imposed upon the franchise of a foreign corporation for the privilege of doing business within the State when (1) the business consists solely of interstate commerce, and (2) the tax is computed at a nondiscriminatory rate on that part of the corporation's net income which is reasonably attributable to its business activities within the State. For the reasons hereinafter stated, we hold this application of the tax invalid.

Petitioner, Spector Motor Service, Inc., is a Missouri corporation engaged exclusively in interstate trucking. It instituted this action in 1942 in the United States District Court for the District of Connecticut against the Tax Commissioner of that State. It sought to enjoin collection of assessments and penalties totaling $7,795.50, which had been levied against it, for various periods between June 1, 1935, and December 31, 1940, under the Connecticut Corporation Business Tax Act of 1935 and amendments thereto.[1] It asked also for a declaratory

---

[1] "SEC. 418c. IMPOSITION OF TAX. Every mutual savings bank, savings and loan association and building and loan association doing business in this state, and *every other corporation or association carrying on business in this state which is required to report to the collector of internal revenue* for the district in which such corporation or association has its principal place of business for the purpose of assessment, collection and payment of an income tax [with exceptions not material here] . . . *shall pay, annually, a tax or excise upon its franchise for the privilege of carrying on or doing business within*

judgment as to its liability, if any, under that Act. It claimed that the tax imposed by the Act did not apply to it and that, if it did, such application violated both the Connecticut Constitution and the Commerce and Due Process Clauses of the United States Constitution. Finally, it alleged that it had no plain, speedy and efficient remedy at law or in equity in the state courts [2] and that the collection of the taxes and penalties by the means provided in the statute would cause it irreparable injury. The District Court took jurisdiction, held that the Act did not apply to petitioner and granted the injunction sought. 47 F. Supp. 671. The Court of Appeals for the Second Circuit, one judge dissenting, reversed. 139 F. 2d 809. It held that the tax did apply to petitioner and was constitutional. We granted certiorari, 322 U. S. 720, but, after hearing, remanded the cause to the District Court with directions to retain the bill pending the determination of proceedings to be brought in the state court in conformity with the opinion rendered, 323 U. S. 101.

---

*the state,* such tax to be measured by the entire net income as herein defined received by such corporation or association from business transacted within the state during the income year and to be assessed at the rate of two per cent; . . . ." (Emphasis supplied.) Conn. Gen. Stat. Cum. Supp. 1935.

This section was amended in 1937 by inserting in the first italicized clause, after the words *"every other corporation or association carrying on,"* the words *"or having the right to carry on."* Conn. Gen. Stat. Cum. Supp. 1939, § 354e. Our conclusion is the same as to the assessments levied before and those levied after the amendment.

The current revision of the statute, as subsequently amended, appears in Conn. Gen. Stat., 1949, §§ 1896–1921.

[2] ". . . no [United States] district court shall have jurisdiction of any suit to enjoin, suspend, or restrain the assessment, levy, or collection of any tax imposed by or pursuant to the laws of any State where a plain, speedy, and efficient remedy may be had at law or in equity in the courts of such State." 50 Stat. 738, 28 U. S. C. (1940 ed.) § 41 (1). See 28 U. S. C. (1946 ed., Supp. III) § 1341.

Petitioner thereupon sought a declaratory judgment in the Superior Court for Hartford County, Connecticut. The Superior Court held that the tax was applicable to petitioner but invalid under the Commerce Clause. 15 Conn. Supp. 205. The Supreme Court of Errors of the State of Connecticut likewise held that petitioner was subject to the tax but it declined to pass on the effect of the Commerce Clause. 135 Conn. 37, 70, 61 A. 2d 89, 105. On a motion asking it to dissolve its original injunction, the United States District Court declined to do so. 88 F. Supp. 711. It reviewed the recent decisions and held that, applying the Act to petitioner, as required by the interpretation of it by the state courts, such application violated the Commerce Clause of the United States Constitution. The Court of Appeals for the Second Circuit, acting through the same majority as on the previous occasion, reversed. One judge dissented for the reasons stated by the district judge and by the judge who had dissented on the former appeal. 181 F. 2d 150. We granted certiorari because of the fundamental nature of the issue and the apparent conflict between the judgment below and previous judgments of this Court. 340 U. S. 806. The case was argued twice at this term.

The United States District Court had jurisdiction over this case in the first instance because of the uncertainty of the adequacy of a remedy in the state courts, and it did not lose that jurisdiction by virtue of the later clarification of the procedure in the courts of Connecticut. *American Life Ins. Co.* v. *Stewart,* 300 U. S. 203; *Dawson* v. *Kentucky Distilleries Co.,* 255 U. S. 288.

The vital issue which remains is whether the application of the tax to petitioner violates the Commerce Clause of the Federal Constitution. We come to that issue now with the benefit of a statement from the state court of final jurisdiction showing exactly what it is that the State has sought to tax. The all-important "operating inci-

dence" of the tax is thus made clear.[3]   After full consideration and with knowledge that its statement would be made the basis of determining the validity of the application of the tax under the Commerce Clause, that court said:

> "The tax is then a tax or excise upon the franchise of corporations for the privilege of carrying on or doing business in the state, whether they be domestic or foreign.   *Stanley Works* v. *Hackett,* 122 Conn. 547, 551, 190 A. 743.   Net earnings are used merely for the purpose of determining the amount to be paid by each corporation, a measure which, by the application of the rate charged, was intended to impose upon each corporation a share of the general tax burden as nearly as possible equivalent to that borne by other wealth in the state.   As regards a corporation doing business both within and without the state, the intention was, by the use of a rather complicated formula, to measure the tax by determining as fairly as possible the proportionate amount of its business done in this state.   There is no ground upon which the tax can be said to rest upon the use of highways by motor trucks . . . ."   135 Conn. at 56–57, 61 A. 2d at 98–99.

The incidence of the tax is upon no intrastate commerce activities because there are none.   Petitioner is engaged only in interstate transportation.   Its principal place of business is in Illinois.   It is authorized by the Interstate Commerce Commission to do certain interstate trucking and by the Connecticut Public Utilities Commission to do part of such interstate trucking in Connecticut.   Petitioner has filed with the Secretary of State of Connecticut a certificate of its incorporation in Missouri, has designated an agent in Connecticut for service

---

[3] *Wisconsin* v. *Penney Co.,* 311 U. S. 435, 444.

of process and has paid the state fee required in that connection. It has not been authorized by the State of Connecticut to do intrastate trucking and does not engage in it. See *Terminal Taxicab Co.* v. *District of Columbia,* 241 U. S. 252, 253–254.

Petitioner's business is the interstate transportation of freight by motor truck between east and west. When a full truckload is to be shipped to or from any customer in Connecticut, petitioner's over-the-road trucks go directly to the customer's place of business. In the case of less-than-truckload shipments, pickup trucks operated by petitioner gather the freight from customers for assembly into full truckloads at either of two terminals maintained within the State. "The pickup trucks merely act as a part of the interstate transportation of the freight." 135 Conn. at 44, 61 A. 2d at 93.

The tax does not discriminate between interstate and intrastate commerce. Neither the amount of the tax nor its computation need be considered by us in view of our disposition of the case. The objection to its validity does not rest on a claim that it places an unduly heavy burden on interstate commerce in return for protection given by the State. The tax is not levied as compensation for the use of highways [4] or collected in lieu of an ad valorem property tax.[5] Those bases of taxation have been disclaimed by the highest court of the taxing State. It is not a fee for an inspection or a tax on sales or use. It is a

---

[4] See *Capitol Greyhound Lines* v. *Brice,* 339 U. S. 542; *Aero Transit Co.* v. *Board of Comm'rs,* 332 U. S. 495; *Interstate Busses Corp.* v. *Blodgett,* 276 U. S. 245 (Conn. excise tax on the use of the highways). Cf. *Memphis Gas Co.* v. *Stone,* 335 U. S. 80; *McCarroll* v. *Dixie Lines,* 309 U. S. 176.

[5] See *Interstate Pipe Line Co.* v. *Stone,* 337 U. S. 662, 679; *Cudahy Packing Co.* v. *Minnesota,* 246 U. S. 450; *Old Dominion S. S. Co.* v. *Virginia,* 198 U. S. 299; *Postal Telegraph Cable Co.* v. *Adams,* 155 U. S. 688.

"tax or excise" placed unequivocally upon the corporation's franchise for the privilege of carrying on exclusively interstate transportation in the State. It serves no purpose for the State Tax Commissioner to suggest that, if there were some intrastate commerce involved or if an appropriate tax were imposed as compensation for petitioner's use of the highways, the same sum of money as is at issue here might be collected lawfully from petitioner. Even though the financial burden on interstate commerce might be the same, the question whether a state may validly make interstate commerce pay its way depends first of all upon the constitutional channel through which it attempts to do so. *Freeman* v. *Hewit,* 329 U. S. 249; *McLeod* v. *Dilworth Co.,* 322 U. S. 327.

Taxing power is inherent in sovereign states, yet the states of the United States have divided their taxing power between the Federal Government and themselves. They delegated to the United States the exclusive power to tax the privilege to engage in interstate commerce when they gave Congress the power "To regulate Commerce with foreign Nations, and among the several States . . . ." U. S. Const., Art. I, § 8, cl. 3. While the reach of the reserved taxing power of a state is great, the constitutional separation of the federal and state powers makes it essential that no state be permitted to exercise, without authority from Congress, those functions which it has delegated exclusively to Congress. Another example of this basic separation of powers is the inability of the states to tax the agencies through which the United States exercises its sovereign powers. See *M'Culloch* v. *Maryland,* 4 Wheat. 316, 425–437; *Brown* v. *Maryland,* 12 Wheat. 419, 445–449; *Mayo* v. *United States,* 319 U. S. 441.

The answer in the instant case has been made clear by the courts of Connecticut. It is not a matter of labels. The incidence of the tax provides the answer. The

courts of Connecticut have held that the tax before us attaches solely to the franchise of petitioner to do interstate business. The State is not precluded from imposing taxes upon other activities or aspects of this business which, unlike the privilege of doing interstate business, are subject to the sovereign power of the State. Those taxes may be imposed although their payment may come out of the funds derived from petitioner's interstate business, provided the taxes are so imposed that their burden will be reasonably related to the powers of the State and nondiscriminatory.

This Court heretofore has struck down, under the Commerce Clause, state taxes upon the privilege of carrying on a business that was *exclusively* interstate in character. The constitutional infirmity of such a tax persists no matter how fairly it is apportioned to business done within the state. *Alpha Portland Cement Co.* v. *Massachusetts,* 268 U. S. 203 (measured by percentages of "corporate excess" and net income); *Ozark Pipe Line Corp.* v. *Monier,* 266 U. S. 555 (measured by percentage of capital stock and surplus). See *Interstate Pipe Line Co.* v. *Stone,* 337 U. S. 662, 669, *et seq.* (dissenting opinion which discusses the issue on the assumption that the activities were in interstate commerce); *Joseph* v. *Carter & Weekes Co.,* 330 U. S. 422; *Freeman* v. *Hewit, supra.*[6]

Our conclusion is not in conflict with the principle that, where a taxpayer is engaged both in intrastate and interstate commerce, a state may tax the privilege of carrying

---

[6] The decision in *Memphis Gas Co.* v. *Beeler,* 315 U. S. 649, upheld a Tennessee tax on earnings of the taxpayer within that State where the earnings were derived from the intrastate distribution of gas by the taxpayer in a joint enterprise with the Memphis Power & Light Company. Any suggestion in that opinion as to the possible validity of such a tax if applied to earnings derived wholly from interstate commerce is not essential to the decision in the case.

on intrastate business and, within reasonable limits,[7] may compute the amount of the charge by applying the tax rate to a fair proportion of the taxpayer's business done within the state, including both interstate and intrastate. *Interstate Pipe Line Co.* v. *Stone, supra; International Harvester Co.* v. *Evatt,* 329 U. S. 416; *Atlantic Lumber Co.* v. *Comm'r of Corporations and Taxation,* 298 U. S. 553. The same is true where the taxpayer's business activity is local in nature, such as the transportation of passengers between points within the same state, although including interstate travel, *Central Greyhound Lines* v. *Mealey,* 334 U. S. 653, or the publication of a newspaper, *Western Live Stock* v. *Bureau of Revenue,* 303 U. S. 250. See also, *Memphis Gas Co.* v. *Stone,* 335 U. S. 80.

In this field there is not only reason but long-established precedent for keeping the federal privilege of carrying on exclusively interstate commerce free from state taxation. To do so gives lateral support to one of the cornerstones of our constitutional law—*M'Culloch* v. *Maryland, supra.*

The judgment of the Court of Appeals, which reversed that of the District Court, is accordingly

*Reversed.*

MR. JUSTICE CLARK, with whom MR. JUSTICE BLACK and MR. JUSTICE DOUGLAS join, dissenting.

The Court assumes, and I think it has been clearly demonstrated, that the tax under challenge is nondiscriminatory, fairly apportioned and not an undue burden on interstate commerce. Hence, if appellant had been

---

[7] See *International Harvester Co.* v. *Evatt,* 329 U. S. 416; *Butler Bros.* v. *McColgan,* 315 U. S. 501; *Department of Treasury* v. *Wood Preserving Corp.,* 313 U. S. 62; *Ford Motor Co.* v. *Beauchamp,* 308 U. S. 331; *Connecticut General Life Ins. Co.* v. *Johnson,* 303 U. S. 77; *Hans Rees' Sons* v. *North Carolina,* 283 U. S. 123; *Underwood Typewriter Co.* v. *Chamberlain,* 254 U. S. 113.

engaged in an iota of activity which the Court would be willing to call "intrastate," Connecticut could have applied its tax to the company's interstate business in the precise form which it now seeks to employ—a tax on the privilege of doing business in Connecticut measured by the entire net income attributable to the State, even though derived from interstate commerce.

But solely because Spector engages in what the Court calls "exclusively interstate" business, a different standard is applied. The Court does not ask whether the State is merely asking interstate commerce to pay its way, or whether the State in fact provides protection and services for which such commerce may fairly be charged. Nor is the Court concerned whether the tax puts interstate business at a competitive disadvantage or is likely to do so. Instead, the tax is declared invalid simply because the State has verbally characterized it as a levy on the privilege of doing business within its borders. The Court concedes, or at least appears to concede, that if the Connecticut legislature or highest court had described the tax as one for the use of highways or in lieu of an ad valorem property tax, Spector would have had to pay the same amount, calculated in the same way, as is sought to be collected here. In acknowledging this, the Court's own opinion totally refutes its protestation that the standard employed to strike down Connecticut's tax is more than a matter of labels. Spector remains free—as it has since the tax law was adopted in 1935—from paying any share of the State's expenses, and its tax-free status continues until Connecticut renames or reshuffles its tax.

Neither such a standard nor such a result persuades me. I agree with the well-reasoned opinions of the court below that the cases upholding fairly apportioned taxes on mixed intrastate and interstate business, and recognizing the right of states to make interstate commerce pay its

way, have enfeebled—and justifiably so—the precedents which today's decision restores to full vigor. In the not too distant past, this seemed to be quite clear. In *Memphis Natural Gas Co.* v. *Beeler,* 315 U. S. 649 (1942), a tax was upheld as being reasonably attributable to intrastate activities. But Chief Justice Stone, speaking for a unanimous Court, went further to state:

> "In any case, even if taxpayer's business were wholly interstate commerce, a nondiscriminatory tax by Tennessee upon the net income of a foreign corporation having a commercial domicile there . . . or upon net income derived from within the state . . . is not prohibited by the commerce clause . . . ." *Id.* at 656.

In light of the apparent need for clearing up the tangled underbrush of past cases, it appears that this view was delivered advisedly. Nor do I understand it to have been upset by *Freeman* v. *Hewit,* 329 U. S. 249 (1946), or *Joseph* v. *Carter & Weekes Co.,* 330 U. S. 422 (1947). The former involved a gross-receipts tax capable of duplication by another state; the latter involved a gross-receipts tax rather than a net-income tax; and the opinion in each case was written by a member of the Court who joined in the *Beeler* decision.

But in any event, I would confine those decisions to their "special facts." *Freeman* v. *Hewit, supra,* at 252. The Connecticut tax meets every practical test of fairness and propriety enunciated in cases upholding privilege taxes on corporations doing a mixed intrastate and interstate business. These cases should govern here, for there is no apparent difference between an "exclusively interstate" business and a "mixed" business which would warrant different constitutional regard. There is nothing spiritual about interstate commerce. It is rarely devoid of significant contacts with the several states. Hence,

this Court has long treated the problems in this field with a flexibility which the competing demands of federal and state governmental spheres have required. In the absence of federal action, this Court has been quick to recognize legitimate local interests and uphold state regulations of activities which admittedly form a part of, or impinge on, interstate commerce. See, *e. g., South Carolina Highway Dept.* v. *Barnwell Bros.,* 303 U. S. 177 (1938). The same approach is hardly foreign to the field of state taxes:

> ". . . [W]hen accommodation must be made between state and national interests, manufacture within a State, though destined for shipment outside, is not a seamless web so as to prevent a State from giving the manufacturing part detached relevance for purposes of local taxation." *Freeman* v. *Hewit, supra,* at 255.

A similar recognition of facts is no less suited to this case. Spector qualified to do business in the State on June 11, 1934, by filing the necessary papers with the Secretary of State. It leases and utilizes terminals in Connecticut. It employs twenty-seven full-time workers in Connecticut, the payroll at New Britain amounting to $1,200 per week. It owns pickup trucks which are registered in its name with the State Motor Vehicle Department and which ply the streets of Connecticut cities. It uses heavy trucks which grind over Connecticut highways. As pointed out by the Connecticut Supreme Court of Errors, its leaseholds

> ". . . were the means adopted by it for the successful operation of its business in this state, and no doubt they were of material service in producing the large proportion of the plaintiff's business which is attributable to Connecticut." *Spector Motor Service, Inc.* v. *Walsh,* 135 Conn. 37, 50, 61 A. 2d 89, 96 (1948).

To be sure, the company does not make intrastate deliveries. But if it did, its activities would differ only in that its trucks might use different streets and highways and make different stops; the protection and services rendered by the State would be the same. The local aspects of Spector's business, even though it might technically be "exclusively interstate," are easily as substantial as those which this Court recently found adequate to uphold parts of the Illinois occupation tax, *Norton Co.* v. *Department of Revenue,* 340 U. S. 534 (1951). They are at least as extensive as those which validated a "privilege" tax in *Memphis Natural Gas Co.* v. *Stone,* 335 U. S. 80 (1948).

It. has taken eight years and eight courts to bring this battered litigation to an end. The taxes involved go back thirteen years. It is therefore no answer to Connecticut and some thirty other states who have similar tax measures that they can now collect the same revenues by enacting laws more felicitously drafted. Because of its failure to use the right tag, Connecticut cannot collect from Spector for the years 1937 to date, and it and other states may well have past collections taken away and turned into taxpayer bonanzas by suits for refund not barred by the respective statutes of limitation.

Nor can the states be entirely certain that statutes recast in the light of this decision will be immune from later constitutional attack. It is at least doubtful that this statute is the only kind of measure which the Court might think would impose a tax "on the privilege of doing interstate business." But even assuming that the Court has promulgated a sure guide for states to follow in future enactments, the fact remains that there is no reasonable warrant for cloaking a purely verbal standard with constitutional dignity. "Exclusively interstate commerce" receives adequate protection when state levies. are fairly

apportioned and nondiscriminatory. See opinion of Justice Rutledge in *Interstate Oil Pipe Line Co.* v. *Stone,* 337 U. S. 662 (1949). The "protection" bestowed by today's decision is neither substantial nor deserved.

Objections to the fairness of Connecticut's apportionment formula have been correctly disposed of by the Court of Appeals. I would affirm its judgment.