**EL PASO ELECTRIC COMPANY, Appellant,**

v.

**Robert S. CALVERT et al., Appellees.**

No. 11270.

Court of Civil Appeals of Texas.

Austin.

Dec. 2, 1964.

Rehearing Denied Jan. 6, 1965.

Kemp, Smith, Brown, Goggin & White, Tad R. Smith, Jack Ratliff, El Paso, for appellant.

Waggoner Carr, Atty. Gen., H. Grady Chandler, Gordon C. Cass, Asst. Attys. Gen., Austin, for appellees.

PHILLIPS, Justice.

Appellant, El Paso Electric Company, the plaintiff in the trial court, is a Texas Corporation engaged in the business of supplying electric energy to several incorporated municipalities in Texas. It paid the occupation tax required of public utilities by Article 11.03, Title 122A, Revised Civil Statutes of Texas, V.A.T.S. Tax.-Gen., for the second, third and fourth quarters for the year 1963 and the first quarter of the year 1964 under protest and thereafter brought suit against the State of Texas to recover these taxes.

Trial was before the court and the court entered judgment for the State of Texas.

We affirm the judgment of the trial court.

Appellant is a privately owned public utility serving several Texas cities with electric power which includes the incorporated cities of El Paso, Anthony and Van Horn, Texas. In addition it serves some outlying areas in Texas and New Mexico. Appellant has two generating plants. One is located near Anpara, New Mexico, known as the Rio Grande Station, and the other, located near Newman, Texas, is known as the Newman Station. Appellant also owns and operates a system of transmission lines, transformer stations and other equipment used in distributing electric energy for sale at retail and wholesale rates. Some of the equipment is located within the city limits of El Paso, Anthony and Van Horn, Texas.

Part of the power sold by appellant in Texas is generated in New Mexico at the Rio Grande Station; the remainder is generated in Texas at the Newman Station.

Article 11.03, V.C.S., provides for an occupation tax on utility companies selling electric power to incorporated cities or towns in the State of Texas, the pertinent portions of which are set out below.[1]

1. "(1) Each individual, company, corporation, or association owning, operating, managing or controlling any gas, electric light, electric power, or water works, or water and light plant, located within any incorporated town or city in this State, and used for local sale and distribution in said town or city, and charging for such gas, electric lights, electric power, or water, shall make quarterly, on the first day of January, April, July, and October of each year, a report to the Comptroller under oath of the individual, or of the president, treasurer or superintendent of such company, or corporation, or association, showing the gross amount received from such business done in each such incorporated city or town within this State in the payment of charges for such gas, electric lights, electric power, or water for the quarter next preceding. Said individual, company, corporation, or association, at the time of making said report for any such incorporated town or city of more than one thousand (1,000) inhabitants and less than two thousand, five hundred (2,500) inhabitants, according to the last Federal Census next preceding the filing of said report, shall pay to the Treasurer of this State an occupation tax for the quarter beginning on said date equal to .581% of said gross receipts, as shown by said report; and for any incorporated town or city of more than two thousand, five hundred (2,500) inhabitants and less than ten thousand (10,000) inhabitants, according

Appellant is before this Court on two points of error: one, that the district court erred in concluding that the contested tax, under these facts, did not violate the Federal Constitution; and two, that the court erred in concluding that the tax did not violate the Texas Constitution.

With respect to the Federal Constitution, appellant argues that the tax in question is a tax in interstate commerce and creates the risk of a multiple tax burden on an interstate business.

Under the facts before us we find that over fifty per cent of the electric energy sold in Texas is generated in Texas while energy generated in Texas is transmitted into New Mexico and sold there. Conversely a portion of the energy generated in New Mexico crosses into Texas and is sold here while the remainder is sold in New Mexico. As we understand the facts there is a commingling of the electricity from its original sources of generation after which the larger portion is sold in Texas and the remainder in New Mexico.

We hold that under the statute in question the appellant is in the public utility business in El Paso, Anthony and Van Horn, Texas and that while a certain portion of the electricity used in that business passes from one State to another, the facts of the operation cause it to fall under that class of cases most recently exemplified by the United States Supreme Court in General Motors v. Washington, 377 U.S.

436, 84 S.Ct. 1564, 12 L.Ed.2d 430 (1964) wherein the Court stated:

" 'It is beyond dispute,' we said in Northwestern States Portland Cement Co. v. Minnesota, 358 U.S. [450] at 458, 79 S.Ct. 357, 3 L.Ed.2d 421 'that a State may not lay a tax on the "privilege" of engaging in interstate commerce.' But that is not this case. To so contend here is to overlook a long line of cases of this Court holding that an in-state activity may be a sufficient local incident upon which a tax may be based. As we said in Spector Motor Service, Inc., v. O'Connor, 340 U.S. 602, 609, 71 S.Ct. 508, 95 L.Ed. 573 (1951), 'the State is not precluded from imposing taxes upon other activities or aspects of this [interstate] business which, unlike the privilege of doing interstate business, are subject to the sovereign power of the State.' This is exactly what Washington seeks to do here and we cannot say that appellant has shown that its activities within the State are not such incidents that the State can reach. Noron Co. v. Department of Revenue, supra, 340 U.S. at 537, 71 S.Ct. 377, 95 L.Ed. 517."

In East Ohio Gas Co. v. Tax Comm., 283 U.S. 465, 51 S.Ct. 499, 75 L.Ed. 1171 (1931), the Supreme Court had before it a tax being imposed on corporations engaged in the business of supplying gas for light,

to the last Federal Census next preceding the filing of said report, the said individual, company, corporation, or association at the time of making said report shall pay to the Treasurer of this State an occupation tax for the quarter beginning on said date an amount equal to 1.07% of said gross receipts, as shown by said report; and for any incorporated town or city of ten thousand (10,000) inhabitants or more, according to the last Federal census next preceding the filing of said report, the said individual, company, corporation, or association, at the time of making said report, shall pay to the Treasurer of this State an occupation tax for the quarter beginning on

said date an amount equal to 1.997% of said gross receipts, as shown by said report. Nothing herein shall apply to any such gas, electric light, power or water works, or water and light plant, within this State, owned and operated by any city or town, nor to any county or water improvement or conservation district.

"(2) Nothing herein shall be construed to require payment of the tax on gross receipts herein levied more than once on the same commodity, and where the commodity is produced by one individual, company, corporation, or association, and distributed by another, the tax shall be paid by the distributor alone.
" * * * *"

heat or power in the State of Ohio at the rate of 1.35 per cent on all gross receipts on its intrastate business. The appellant in the Ohio case furnished some communities gas exclusively from outside the State of Ohio, to some gas only from Ohio, and to others, a mixture of that from West Virginia and Ohio. The facts in that case are similar to those here. In Ohio the Court said:

> "It is elementary that a state can neither lay a tax on the act of engaging in interstate commerce nor on gross receipts therefrom. Pullman Co. v. Richardson, 261 U.S. 330, 338, 43 S. Ct. 366, 67 L.Ed. 682. New Jersey Bell Tel. Co. v. Tax Board, 280 U.S. 338, 346, 50 S.Ct. 111, 74 L.Ed. 463. And, while a state may require payment of an occupation tax by one engaged in both intrastate and interstate commerce, the exaction, in order to be valid, must be imposed solely on account of the intrastate business done, and it must appear that one engaged exclusively in interstate business would not be subject to the imposition, and that the taxpayer could discontinue the intrastate business without withdrawing also from the interstate business. Sprout v. South Bend, 277 U.S. 163, 170–171, 48 S.Ct. 502, 72 L.Ed. 833, 62 A.L.R. 45, and cases cited."

The tax in the case at bar meets the test laid down by the United States Supreme Court in that portion of the Ohio case quoted above. The interstate aspect of the business is separate and distinct from its intrastate business or business of a distinctly local nature.

The Court continues in Ohio:

> "The Ohio statute does not purport to affect interstate commerce. The specified excise taxes are laid for the privilege of carrying on intrastate business. The amounts were calculated on gross receipts derived wholly from appellant's intrastate business, notwith-standing the gas used had moved in interstate commerce."

Also see McGoldrick v. Berwind-White Coal Mining Co., 309 U.S. 33, 60 S.Ct. 388, 84 L.Ed. 565 (1940).

Appellant contends that the New Mexico generated energy flows across the State line without interruption at the speed of light directly to the ultimate consumer. That its generation, transmission, delivery and consumption take place in the same microsecond and for all practical purposes are simultaneous. This may be true from a technical viewpoint; however, in Utah Power and Light v. Pfost, 286 U.S. 165, 52 S.Ct. 548, 76 L.Ed. 1038 (1932), the Supreme Court held that while generation and transmission of electrical energy are substantially instantaneous they are essentially separable and distinct operations. Consequently, the sale of electricity to users in the Texas towns is separable and distinct from the transmission thereof and is essentially local in character for tax purposes.

It would serve no useful purpose to discuss the many cases cited by appellant in its brief as they are, for the most part, cases dealing with the prohibition on the part of the states from imposing a tax on the privilege of engaging in interstate commerce. These cases are not in point here.

The Supreme Court of the United States has stated that in a situation such as the case before us the question is whether the State has given anything for which it can ask return. Texas has exercised its power of taxation in relation to the opportunities which it has given appellant such as the substantial privilege of carrying on business within it borders with the attendant protection and other benefits that it has conferred by the fact of being an orderly and civilized society. The fact that a tax is contingent upon events brought to pass without the State does not destroy the connection between such a tax and transactions within the State for which the tax is exacted. Wisconsin v. J. C. Penney Co.,

311 U.S. 435, 61 S.Ct. 246, 85 L.Ed. 267 (1940).

■ Nor do we feel that the "risk of multiple taxation" argument advanced by appellant is valid. While New Mexico did impose a tax on generation of electrical energy several years ago, such a tax was discontinued and at present there is no tax on generation. This point was raised in General Motors v. Washington, cited above, where General Motors claimed that a sales tax on their products in Washington was invalid, among other reasons, because some of its products taxed by Washington were manufactured in St. Louis where a license tax measured by sales before shipment is levied. In rejecting this argument the Court said:

> "Thereafter, in Northwestern States Portland Cement Co. v. Minnesota, supra, 358 U.S. at 463, 79 S.Ct. 365, we held that 'in this type of case the taxpayers must show that the formula places a burden upon interstate commerce in a constitutional sense.' Appellant has not done this. It has not demonstrated what definite burden, in a constitutional sense, the St. Louis tax places on the identical interstate shipments by which Washington measures its tax. Cf. International Harvester Co. v. Evatt, 329 U.S. 416, 421–423, 67 S.Ct. 444, 91 L.Ed. 390 (1947). And further, it has not been shown that Oregon levies any tax on appellant's activity bearing on Washington sales. In such cases we have refrained from passing on the question of 'multiple taxation.' e.g. Northwestern States Portland Cement Co. v. Minnesota, supra, and we adhere to that position."

In the case at bar, the sales to local consumers in Texas are taxed by Texas, the energy is used and cannot be again taxed. The tax is levied on a segment of the appellant's several activities that is local to Texas and has no bearing on its interstate activity or activities attributable to New Mexico. We overrule this point.

■ We likewise overrule appellant's contention that the contested tax violates Art. 8, Section 2, of the Texas Constitution, Vernon's Ann.St., which provides that "All occupation taxes shall be equal and uniform upon the same class of subjects within the limits of the authority levying the tax."

In Dallas Gas Company v. State, Tex. Civ.App., 261 S.W. 1063, writ refused, this Court in affirming a tax recovery by the State on occupation taxes imposed on those engaged in the wholesale oil business in Texas, stated that under the constitutional provision above quoted, the tax shall be equal and uniform upon the same class and that the law cannot operate unequally upon subjects between which there is no real difference to justify separate treatment.

Here the tax in question operates on all public utilities operating in the described towns or cities, is equal and uniform as to the general class covered and is not in violation of the constitutional provision quoted. As stated above, the appellant is being taxed on its local Texas operation as a public utility and as such is being treated equally with any other Texas public utility. It is for this reason that State v. Humble Pipe Line Co., 112 Tex. 375, 247 S.W. 1082 cited by appellants is not in point. In that case a gross receipt tax was levied on interstate pipelines as well as intrastate pipelines. The Court held that since the tax on interstate pipelines was unconstitutional the remaining tax on intrastate pipelines would place an unequal burden on the same class of subjects consequently invidious to Art. 8, Sec. 2, of the Texas Constitution. The tax was not on any operation of the interstate pipeline that could be classed as local in nature but fell directly upon its interstate operation.

Affirmed.