REQUESTED BY: Dear Senator DeCamp:
You have submitted to us proposed amendments to LB 103, and have asked our opinion as to their validity. We are confident that, in their present form, these amendments would not pass constitutional muster.
The amendments would provide for a tax on railroad carriers transporting coal in interstate commerce through this state in the amount of one cent per ton of coal transported. Fifty percent of the proceeds of the tax would be distributed to the various counties, cities, and villages in the proportion that the total miles of track in such counties, cities, and villages bears to the total amount of track in the state. The balance of the tax would be distributed to the various counties, cities, and villages on a population basis.
Until recently, we would have said that this was a tax on interstate commerce, and was forbidden by the commerce clause of the Federal Constitution, as interpreted inSpector Motor Service v. O'Connor, 340 U.S. 602,95 L.Ed. 573, 71 S.Ct. 508 (1951). However, the Supreme Court overruledSpector in Complete Auto Transit, Inc. v. Brady,430 U.S. 274, 51 L.Ed. 2d 326, 97 S.Ct. 1076 (1977). It now appears that some state taxation of interstate commerce is permissible. The Court further discussed the question inWashington Revenue Department v. Stevedoring Assn.,435 U.S. 734, 55 L.Ed. 2d 682, 98 S.Ct. (1978). In that case the court permitted state taxation of Stevedoring, in spite of its being a vital part of interstate commerce. We cannot therefore say that a tax on the transportation of goods across the state is automatically forbidden.
However, all of the cases emphasize that the tax cannot discriminate against interstate commerce. The tax we are examining applies only to carriers transporting coal in interstate commerce. This is clearly discriminatory, so we need not decide the very complex question of whether a nondiscriminatory tax could be upheld.
Even if the bill were amended to make it nondiscriminatory against interstate commerce, a classification problem would remain. It applies only to the railroad carriers of coal. The first section of the bill recites that the energy crisis has increased the demand for coal, and hence the rail traffic hauling it, with several undesirable side effects. However, we are unable to perceive that the hauling of coal creates any problem unique to that commodity. Mentioned in section 1 are hazards of increased derailments and car-train accidents and inconvenience to citizens and loss of time and gasoline while waiting at railroad crossings. None of these problems are different with respect to coal than with respect to other freight.
As a matter of fact, because of its compactness and weight, a case could probably be made that a train carrying a given weight of coal would require fewer cars, and hence, cause less inconvenience to the public, than a train hauling the same number of tons of most other freight.
Article III, section 18, of the Nebraska Constitution requires classifications to rest upon real differences in situations or circumstances which naturally suggest the justice and expediency of diverse treatment of members of the classes created. We are unable to see such differences here, and believe the bill would be held discriminatory in singling out coal carriers for this tax.