LASSER, P.J.T.C.
This is an action contesting the assessment of New Jersey corporation business tax for the year 1980. Taxpayer, a Maryland corporation engaged in the manufacture of asphalt roofing products, maintains that its contacts with the State of New Jersey are insufficient to subject it to taxation under the New Jersey Corporation Business Tax Act, N.J.S.A. 54:10A-1 et seq. This act imposes a franchise or privilege tax on every foreign and domestic corporation “... for the privilege of having or exercising its corporate franchise in this State, or for the privilege of doing business, employing or owning capital or property, or maintaining an office, in this State.” N.J.S.A. 54:10A-2.
The parties stipulated the following facts with respect to the 1980 tax year. Taxpayer, Tamko Asphalt Products, Inc. of Maryland (Tamko), is a Maryland corporation and a wholly-owned subsidiary of Tamko Asphalt Products, Inc., located in Joplin, Missouri. Tamko sells its asphalt roofing products in 20 jurisdictions including New Jersey. All of Tamko’s products are manufactured in Maryland and shipped to its out-of-state cus *449 tomers, F.O.B. Maryland, by common carrier or by delivery of the goods to the customers’ trucks at Tamko’s plant in Maryland. Tamko has no license or certificate of authority to conduct business in the State of New Jersey, or any political subdivision thereof, and has no registered agent in this state.
Tamko employs a total of eight salesmen who are compensated on a straight salary basis. Two of the salesmen served New Jersey during 1980. One resided and spent approximately 60% of his time in New Jersey. The other, although not a New Jersey resident, spent approximately 30-35% of his time in New Jersey. In 1980 the New Jersey salesmen incurred expenses of $14,000 in their New Jersey activities. The business cards of the New Jersey resident salesman contain Tamko’s Frederick, Maryland address and telephone number and his own home address and telephone number.
The New Jersey resident salesman maintained in his home a filing cabinet and a desk, paid for with his own funds, which he used for both personal and business records. Tamko did not require him to maintain the filing cabinet and desk and did not reimburse him for this expense. The supervisor of the New Jersey resident salesman entered New Jersey no more than twice in 1980 for the purpose of supervising him. In the performance of his services, the New Jersey resident salesman used an automobile owned by Tamko and registered in New Jersey. Samples and promotional materials furnished by Tamko were carried in the automobile and had a value of approximately $25.
It is the practice of the New Jersey salesmen to visit customers and potential customers in the State and distribute brochures and samples. Tamko’s samples are not usable except as samples. Occasionally, the salesmen examine an existing customer’s inventory to see if Tamko products are stored correctly and to suggest orders, but the salesmen have no responsibility for examining inventory to see if the products are stored correctly, to audit or account for the customer’s inventory or set up displays. Sometimes, salesmen accompany a distributor-custom *450 er and call on customers of the distributor to promote Tamko’s products. Orders are placed directly by the customer with the Maryland office, and the goods are shipped from the Maryland plant by order of the Maryland sales office. Salesmen do not have authority to accept orders. Salesmen do not deliver goods to customers, make credit arrangements or accept payment for orders. Occasionally, New Jersey salesmen receive payments from New Jersey customers and forward them to Tamko. Tamko’s New Jersey salesmen sometimes ask New Jersey customers if they are satisfied with Tamko’s products. They are responsible for receiving and investigating any complaints concerning products purchased by the customer from Tamko and advise Tamko as to what they have learned after filling out complaint and customer comment forms. Tamko provides guidelines to the salesmen for adjusting complaints. The salesmen follow these guidelines but do not repair or replace any goods. There was only one such complaint by a New Jersey customer during 1980.
Tamko does not advertise in New Jersey. It has no bank account, inventory, plant or telephone listing in New Jersey. It has no identifiable office, and retains no law firm, accounting firm or advertising agency in New Jersey. Tamko holds no security interest in property located in the state of New Jersey, has never repossessed any goods sold to a New Jersey customer and, prior to this action, has never utilized the New Jersey courts. Tamko does not consign goods to distributors, dealers or other persons in New Jersey, nor does it approve any person or business for the service, repair or maintenance of its goods.
For the year 1980 Tamko filed corporation tax returns with only two states, Maryland and New Jersey. The New Jersey Division of Taxation requested Tamko to complete a taxable status questionnaire, and Tamko did so on February 24, 1981. By letter of March 16, 1981, the Division of Taxation notified Tamko that it was obligated to file a 1980 New Jersey corporation business tax return. The Division ‘explained in an April 6, 1981 letter that it considered Tamko subject to the New Jersey corporation business tax “commencing April, 1980,” the date its *451 New Jersey resident salesman began to use the Tamko automobile in New Jersey.
At a conference between Tamko and the Division, Tamko requested that an adjustment be made in the allocation factor pursuant to N.J.S.A. 54:10A-6. The Division of Taxation refused Tamko’s request for an adjustment, and Tamko filed a New Jersey corporation business tax return under protest.
For the year 1980, Tamko’s receipts from its business transactions totaled $6,159,614. Its New Jersey business receipts amounted to approximately 19% of this total, or $1,166,676. Tamko had no net income for 1980. It suffered a loss of $3,668,926.[1] Because the New Jersey corporation business tax requires an add-back to net income in the amount of 90% of interest accrued to holders of 10% or more of a corporation’s capital stock, $1,252,463 was added back to Tamko’s negative net income, reducing the $3,668,926 loss to $2,415,563.
Tamko’s net worth as of December 31, 1980 was a negative $739,115. Because the Corporation Business Tax Act requires an add-back to net worth in the sum of all amounts owed to persons owning 10% or more of the corporation’s capital stock, $13,022,036 of debt to Tamko’s parent company was added to the negative net worth, making Tamko’s adjusted net worth $12,-282,921. The net income and net worth add-backs are not in contest. Tamko’s adjusted net worth, when multiplied by the standard allocation factor, produced an adjusted net worth allocable to New Jersey of $849,843. After multiplying this figure by the 1980 tax rate of $.002 (2 mills), the allocated adjusted net worth produced a tax for 1980 of $1,700. The book value of the automobile situated in New Jersey was $3,598.63 for the tax year 1980. Tamko owns no real or personal property in New Jersey other than the automobile, samples and advertising materials.
Taxpayer claims that it is not subject to New Jersey corporation business tax because its contacts with New Jersey are *452 insufficient to support imposition of this tax. Taxpayer further argues that even if its contacts with New Jersey are sufficient to support taxation under the New Jersey Corporation Business Tax Act, the Interstate Income Act, Pub.L. No. 86-272, 73 Stat. 555, 15 U.S.C. § 381 et seq. (1970), prohibits New Jersey from imposing this tax. Taxpayer also contends that the New Jersey corporation franchise tax imposed on it is violative of the Due Process and Commerce Clauses of the United States Constitution.
The Director contends that Tamko’s contacts with New Jersey are sufficient to support imposition of the corporation business tax and that Pub.L. No. 86-272 is applicable only to taxes measured by net income, not net worth. The Director also contends that New Jersey’s tax is not violative of the Due Process or Commerce Clauses of the United States Constitution and that Tamko is not entitled to an adjustment in the apportionment formula under the New Jersey corporation business tax.
The corporation business tax (“CBT”) is a franchise tax imposed on corporations for the privilege of engaging in business in New Jersey and is measured by both net worth and net income. A corporation is subject to tax if it engages in any of the following activities in New Jersey: (1) having or exercising its corporate franchise; (2) doing business; (3) employing or owning capital or property, or (4) maintaining an office in this state. N.J.S.A. 54:10A-2.
Tamko does not hold a general certificate of authority to do business in this state nor does it hold a certificate, license or other authorization to engage in corporate activity in New Jersey. Nevertheless, a foreign corporation is subject to the CBT if it does business, employs or owns capital or property or maintains an office in this state, whether or not it has formally qualified or is authorized to do business here. N.J.A.C. 18:7-1.-8(a).
I must therefore determine whether Tamko’s activities in this state constitute doing business or employing or owning capital *453 or property in New Jersey within the meaning of the New Jersey Corporation Business Tax Act.
The term “doing business” is defined in N.J.A.C. 18:7-1.9:
(a) The term “doing business” is used in a comprehensive sense and includes all activities which occupy the time or labor of men for profit . ..
(b) Whether a foreign corporation is doing business in New Jersey is determined by the facts in each case. Consideration is given to such factors as:
1. The nature and extent of the activities of the corporation in New Jersey;
2. The location of its offices and other places of business;
3. The continuity, frequency and regularity of the activities of the corporation in New Jersey;
4. The employment in New Jersey of agents, officers and employees;
5. The location of the actual seat of management or control of the corporation.
Tamko does not maintain a New Jersey office, and its managerial center is located at its headquarters in Frederick, Maryland. However, Tamko’s New Jersey activities are substantial. Two salesmen (25% of Tamko’s sales force), one a New Jersey resident, regularly and systematically solicit orders from New Jersey customers, promote Tamko’s products and investigate and report to Frederick, Maryland on customer complaints. On occasion, these salesmen check customer inventory, advise on storage and care of Tamko products and accept payment for orders. The New Jersey resident salesman uses his home for business as well as personal purposes. His business card lists his home address and telephone number and Tamko’s Maryland address and telephone number. The automobile used by the New Jersey resident salesman is registered in New Jersey in Tamko’s name.
The two salesmen assigned to New Jersey incurred approximately $14,000 in expenses in 1980 in connection with their New Jersey activities, and their efforts resulted in New Jersey sales of over one million dollars, 19% of Tamko’s total 1980 sales.
I find that Tamko was regularly and systematically engaged in extensive activities in New Jersey which constituted “doing business” as defined in the Corporation Business Tax Act and the regulations promulgated pursuant thereto. A finding that Tamko was doing business is sufficient to sustain imposi *454 tion of the corporation business tax. It is therefore not necessary for me to determine whether Tamko employs or owns capital or property in the state.
Taxpayer argues that the CBT was not intended to reach taxpayer’s activities in New Jersey and contends that the Corporation Income Tax Act, N.J.S.A. 54:10E-1 et seq., (“CIT”) was enacted to reach corporations such as Tamko which could not be reached by the CBT because the Commerce Clause limited taxation of interstate business by individual states. See 5 New Jersey Tax Policy Committee Report 20-22 (1972). In Spector Motor Service, Inc. v. O’Connor, 340 U.S. 602, 71 S.Ct. 508, 95 L.Ed. 573 (1951), it was held that the Commerce Clause prohibits imposition of a franchise tax on a foreign corporation engaged solely in interstate activity. Solicitation of orders was deemed a purely interstate activity. Memphis Steam Laundry Cleaner, Inc. v. Stone, 342 U.S. 389, 72 S.Ct. 424, 96 L.Ed. 436 (1952). In the late 1950s, however, it was held that, unlike a franchise tax, an income tax on income earned in the taxing state by a foreign corporation engaged in interstate activity was not violative of the Commerce Clause. Northwestern States Portland Cement Co. v. Minnesota, 358 U.S. 450, 79 S.Ct. 357, 3 L.Ed.2d 421 (1959); Brown-Forman Distillers Corp. v. Collector of Revenue, 234 La. 651, 101 So.2d 70 (1958), app. dism., 359 U.S. 28, 79 S.Ct. 602, 3 L.Ed.2d 625 (1959). Tamko concludes that the enactment of the CIT expressed legislative intent to impose an income tax on those corporations engaged solely in interstate commerce and which, since Spector, could not be subject to a franchise tax. Tamko argues that the existence of the CIT expresses an intent by the Legislature to tax intrastate activity under the CBT and interstate activity under the CIT. Tamko contends that if it is taxable at all in New Jersey, it is taxable only under the CIT, not the CBT.
In Roadway Express, Inc. v. Director, Div. of Taxation, 50 N.J. 471, 236 A.2d 577 (1967), the Supreme Court, in construing the CBT, stated:
The basis of the tax is a broad one and is not, as the taxpayers contend, imposed merely or solely for the privilege of doing business in New Jersey ... It was *455 certainly intended to reach foreign corporations doing an intrastate business, an interstate business, or both, as far as constitutionally could be done ... It was enacted in 1945 ... before Speetor ... and during the period when the approach of the United States Supreme Court may be said to have been that of the so-called multiple taxation doctrine, [at 483, 236 A.2d 577].
The multiple taxation doctrine referred to by the court was enunciated in Western Live Stock v. Bureau of Revenue, 303 U.S. 250, 58 S.Ct. 546, 82 L.Ed. 823 (1938), and held that a state tax on interstate businesses did not violate the Commerce Clause unless it subjected interstate commerce to a risk of multiple taxation not borne by local commerce. See Hellerstein, J., “State Franchise Taxation of Interstate Businesses,” 4 Tax 95 (1948).
In 1947, Justice Reed, speaking for the Court, denied New York the right to impose a direct tax on interstate commerce. Joseph v. Carter & Weekes Stevedoring Co., 330 U.S. 422, 67 S.Ct. 815, 91 L.Ed. 993 (1947). In this case the Court did not follow the Western Live Stock test. See also Freeman v. Hewit, 329 U.S. 249, 67 S.Ct. 274, 91 L.Ed. 265 (1946), reh’g den. 329 U.S. 832, 67 S.Ct. 497, 91 L.Ed. 705 (1947). This prohibition against taxation was reiterated in 1951 in Speetor Motor Service, supra. However, Complete Auto Transit v. Brady, 430 U.S. 274, 97 S.Ct. 1076, 51 L.Ed.2d 326.(1977) overruled Speetor and held that a franchise tax on purely interstate business is constitutionally permissible if (1) there is a sufficient nexus with the taxing state to justify the tax, (2) the tax is fairly related to benefits provided by the state to the taxpayer, (3) the tax does not discriminate against interstate commerce, and (4) the tax is fairly apportioned to local activities. Complete Auto Transit lifted the restriction on the states’ ability to impose franchise taxes on corporations engaged in interstate activity. In Washington Rev. Dept. v. Assoc, of Washington Stevedoring Co., 435 U.S. 734, 98 S.Ct. 1388, 55 L.Ed.2d 682 (1979), the Court followed Complete Auto Transit and overruled Garter & Weekes.
New Jersey’s CBT was originally enacted in 1945, during a period when a franchise tax on corporations engaged in interstate commerce was constitutionally permissible. Its intent was to reach corporations such as Tamko. Its ability to reach *456 activities of corporations engaged in interstate commerce was later limited by Carter & Weekes and Spector, but that limitation is no longer in effect. The CIT was enacted to fill the gap created by Carter & Weekes and Spector. The enactment of the CIT does not indicate an intent on the part of the Legislature to limit the reach of the CBT. I therefore conclude that Tamko is doing business in New Jersey and is subject to the CBT within the limits delineated by the Supreme Court in Complete Auto Transit.
Taxpayer further contends that, even assuming the CBT reaches Tamko because of its contacts with New Jersey, the Interstate Income Act, Pub.L. No. 86-272, prohibits imposition of a state tax measured by income on corporations engaged only in the solicitation of orders within the taxing state. Tamko claims that it engages only in solicitation of orders in New Jersey.
The facts stipulated by the parties indicate that Tamko’s activities exceed mere solicitation. Tamko salesmen also promote Tamko products and service customer accounts by investigating, reporting and adjusting customer complaints. Furthermore, for the tax year 1980, Tamko is subject only to the net worth portion of the CBT because Tamko had no 1980 net income. The federal statute is limited to taxes “on or measured by net income.” 15 U.S.C. § 383. New Jersey courts have held that the federal statute does not apply to the net worth portion of the CBT. Clairol v. Kingsley, 109 N.J.Super. 22, 28, 262 A.2d 213 (App.Div.1970), aff’d 57 N.J. 199, 270 A.2d 702 (1970), app. dism. 402 U.S. 902, 91 S.Ct. 1377, 28 L.Ed.2d 643 (1971). Therefore, I find that Pub.L. No. 86-272 does not apply to the subject case.
Tamko contends that the Complete Auto Transit tests and, in particular, fair apportionment, fair relation and nexus, have not been met.
Taxpayer contends that the imposition of the CBT on taxpayer under these facts results in unconstitutional multiple taxation in violation of the Commerce Clause. Taxpayer relies *457 on Cal-Roof Wholesale, Inc. v. State Tax Comm., 242 Or. 435, 410 P.2d 233 (Sup.Ct.1966), which used as the test for multiple taxation the hypothetical adoption by another state of the tax act in question. Tamko argues that if Maryland adopted New Jersey’s corporation business tax, none of Tamko’s business could be allocated to states outside Maryland because the CBT requires a regular place of business outside the taxing state as a prerequisite for allocation, and Tamko maintains no regular place of business outside Maryland. Tamko claims that this would result in unconstitutional multiple taxation of Tamko’s New Jersey activities by both Maryland and New Jersey. The Cal-Roof test was used by the Oregon court because it was contained in an Oregon regulation. The United States Supreme Court test of unconstitutional multiple taxation, however, is whether imposition of the tax will result in actual multiple taxation or the risk of multiple taxation. See General Motors Corp. v. Washington, 377 U.S. 436, 449, 84 S.Ct. 1564, 1572, 12 L.Ed.2d 430 (1964) reh’g den. 379 U.S. 875, 85 S.Ct. 14, 13 L.Ed. 2d 79 (1964); Standard Pressed Steel Co. v. Wash. Revenue Dept., 419 U.S. 560, 95 S.Ct. 706, 42 L.Ed.2d 719 (1975). Actual multiple taxation has not been demonstrated here because Maryland, the only other state imposing a tax on Tamko, does not tax a corporation’s net worth. Taxpayer has offered no evidence that the franchise tax statutes of the 18 other jurisdictions in which Tamko operates, if imposed on Tamko in conjunction with the New Jersey tax, would result in multiple taxation. Taxpayer has not sustained the burden of proving actual multiple taxation or the risk of multiple taxation.
Taxpayer also contends that the New Jersey CBT is not fairly apportioned since the value of Tamko’s property in New Jersey, the automobile used by the New Jersey resident salesman, is less than the net worth allocated to New Jersey under New Jersey’s three-factor allocation formula. This argument fails to take into account the fact that the CBT is an allocated franchise tax measured by Tamko’s net worth everywhere, not solely by its property in New Jersey. As stated in F. W. Wool *458 worth Co. v. Director, Division of Taxation, 45 N.J. 466, 213 A.2d 1 (1965):
[T]he realistic value of the exercise of a franchise in a particular state by a corporation with business activities in more than one jurisdiction is ordinarily not adequately measured by the worth of its assets or income in that state alone, but is enhanced and contributed to by that of the entire enterprise, [at 474, 213 A.2d 1].
The allocation formula is the ratio of New Jersey property to all property, New Jersey payroll to entire payroll, and New Jersey sales to all sales. N.J.S.A. 54:10A-6. It reflects tfie relationship between business activity in New Jersey and all business activity. Tamko derived approximately 19% of its total sales from New Jersey. The net worth allocated to New Jersey was 6.9% of the value of Tamko’s total assets. The corporation business tax imposed on Tamko, whose New Jersey activities resulted in over one million dollars in sales in 1980, was $1,700. I find that the allocation formula represents a fair apportionment of Tamko’s net worth based on Tamko’s business activity in New Jersey.
Taxpayer also contends that there is no nexus between New Jersey and the subject matter taxed. I find that the solicitation of orders, promotion of products and servicing of customer accounts in New Jersey constitute a sufficient nexus with New Jersey to sustain a tax on a foreign corporation. Standard Pressed Steel Co. v. Wash. Rev. Dept., supra; Northwestern States Portland Cement Co. v. Minnesota, supra; Clairol v. Kingsley, supra; Ringgold v. Taxation Div. Director, 4 N.J.Tax 321 (Tax Ct.1982).
Taxpayer contends that the CBT is not fairly related to benefits conferred on Tamko by New Jersey. Tamko has two salesmen regularly in the State and carries on a substantial business in New Jersey. It enjoys the protection of New Jersey’s laws and the benefits of its economic atmosphere. I conclude that there is a fair relation between Tamko’s New Jersey contacts and the benefits conferred by New Jersey based on Tamko’s presence in this state through its resident salesman and business activity here.
*459 Discrimination against interstate commerce is the fourth Complete Auto Transit test. The CBT does not discriminate against interstate commerce because it is applied uniformly to domestic and foreign corporations engaged in intrastate and interstate commerce.
I conclude that the CBT, as imposed on Tamko, meets the four Complete Auto Transit tests and, based on Tamko’s New Jersey business activities, this State may impose a franchise tax on Tamko for the privilege of doing business in New Jersey. I conclude that the tax as imposed is both fair and constitutionally permissible.
The Clerk of the Tax Court is directed to enter judgment in favor of the defendant and dismissing taxpayer’s complaint.

This figure may be incorrect in the stipulation.